# ANNIE A. LOVELACE, Appellant, v. THOMAS J. SUTER et al., Respondents.

### St. Louis Court of Appeals, April 1, 1902.

**Deceit:** ACTION FOR DAMAGES: EVIDENCE, SUFFICIENCY OF. A bank's customer having advised with the cashier of the bank about investments, he offered the customer by letter a certain bond, stating in the letter, "We are satisfied that they are A. No. 1." Subsequently he wrote that the company had called in its bonds, but that he could get the customer a bond in another company that was just as good.   The bond was purchased, and afterwards proved an insecure investment.   Such customer left the matter with the cashier to determine.   The bank had invested largely in the bonds, and such cashier believed them to be a safe  investment, and it did not appear that he gave a dishonest opinion;   *Held*, insufficient to sustain an action for deceit against the bank.

Appeal from Marion Circuit Court.—*Hon. D. H. Eby*, Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

By this action appellant seeks to recover damages from fifteen parties, impleaded as defendants, on the ground that

they were members of a co-partnership engaged in the banking business at the time of the occurrences stated in the petition.

The Marion County Savings Bank was incorporated on the nineteenth day of December, 1867, under a charter of the State of Missouri, which expired by legal limitation twenty years from that day; but this fact seems to have been overlooked by the stockholders and officers of the bank and the business continued in the name of the corporation as if it were still in existence until September, 1898, when the expiration of the charter was detected, a new charter procured and the business continued under the same name.

John W. Russell has been cashier of the bank from its organization to the present time except during a few months prior to the year 1899. Appellant was for many years a customer of the bank in a small way, keeping an account there and likewise depositing her notes and securities in the bank for safe-keeping, the bank collecting the interest and principal as they fell due and depositing the same to her credit. She seems to have had great confidence in the institution, and particularly in its cashier, advising with him about investments and acting on his advice; she did so at least in some instances.

The basis of the present controversy was the sale to appellant by the bank of a thousand dollars bond of the Paris Gas & Electric Light Company of Paris, Texas, in 1889, and certain alleged false and fraudulent representations made to her by Russell to induce the sale; he knowing at the time, it is charged, that said bond was worthless.

The allegations of the petition in respect to the representations had, perhaps, better be stated:

"That at the time of said sale, said agent and cashier Russell, claimed to have and did have great skill and long experience in dealing in all kinds of negotiable and non-negotiable paper and commercial paper of all kinds, which fact was then and there known to this plaintiff. And at the time of

said sale this plaintiff was without experience or skill in dealing in such paper, which fact was then and there well known to said cashier and agent. That at the time of said sale said bond was wholly worthless and of no value whatever, which fact was then and there well known to said agent and cashier of defendants and unknown to plaintiff. That the said maker of said bond was at the time of said sale insolvent, which said insolvency was then and there well known to said agent and cashier and unknown to this plaintiff. That long prior to and up to the time of said sale this plaintiff was a regular customer and depositor of said bank, and at the time of said sale, this plaintiff had on deposit in said bank the sum of one thousand dollars.

"That on or about the second day of February, 1888, the said Russell, as such agent, stated to this plaintiff that the bonds of the Nevada, Missouri, Gas Company were free of taxation and that he, the said Russell, was satisfied that said last-mentioned bonds were 'A No. 1,' and that at the time of the sale aforesaid, said Russell, as such agent, stated to this plaintiff that the said Nevada, Missouri, Gas Company had called in its bonds, and that said cashier and agent, acting for and in behalf of said defendants and knowing the confidence reposed in his skill and experience as aforesaid by the plaintiff and intending to deceive and defraud this plaintiff out of her said sum of one thousand dollars, at the time of said sale, advised this plaintiff to purchase said bond, and then and there in order to induce the plaintiff to purchase said bond, fraudulently and falsely stated to this plaintiff that said bond was just as good as the said Nevada, Missouri, Gas Company's said bonds. That the said Russell, as such agent, at the time of said sale meant by said false and fraudulent statement that said bond so purchased by the plaintiff was a first-class security and was then and there worth the said sum of one thousand dollars, and the plaintiff at the time of said purchase understood said Russell to mean by said false

statement that said bond so purchased by her was a first-class security and was then and there worth the said sum of one thousand dollars."

It is further charged that said bond was absolutely worthless; that the maker thereof was and still is insolvent.

The answer was a general denial and a plea of the five and ten years statutes of limitations.

A replication was filed which averred that the facts constituting the fraud as alleged in the petition were unknown to the plaintiff until the first day of October, 1899, within ten years next before the perpetration of the fraud and within five years next before the institution of this suit; and that during the whole of the time from the sale of the bond until the date last aforesaid, the defendants through their bank and cashier were the agents of the plaintiff for the purpose of caring for and keeping the bond and collecting the interest thereon; that during all that time the defendants through their said agent and cashier concealed the facts constituting the fraud from the plaintiff and from the first day of August, 1894, to the first day of October, 1899, concealed the fact that the maker of the bond was paying no interest thereon, representing to the plaintiff that the interest was being paid regularly and to further deceive her, making payment of the interest to her regularly themselves.

The particular bond which is charged in the petition to have been fraudulently sold to the defendant, was one of an issue of fifty of one thousand dollars each, executed by the said Paris Gas & Electric Light Company on the first day of June, 1888, due twenty years thereafter, bearing semiannual interest coupons of thirty-five dollars each, payable on the first days of June and December of each year and secured by a deed of trust on the property of the said company. Those bonds were sold in April, 1889, to H. M. Noel, a broker of St. Louis, for forty-four thousand dollars.

The evidence is conflicting as to the solvency of said

gas and light company at that time, with a preponderance, perhaps, in favor of its solvency; but there was testimony for the jury on that issue, if the main charge of false representations was made out; and having so concluded, we feel it is unnecessary to incumber the statement with copious extracts from the testimony relating thereto. While said company may have been insolvent if pressed, the testimony shows that it enjoyed a good reputation, as did its officers; was considered solvent at home and abroad, and neither Russell nor any one else could have learned it was insolvent, if that was the case, without a searching examination of its affairs.

The company seems to have progressively lost money, and in 1892 it consolidated with another corporation known as the Paris Railway Company, by the purchase of the latter's property, a new corporation being formed under the name of the Paris Electric Light & Railway Company, which took over the assets of the constituent companies. In 1894, the last-named company reconveyed to the railway company the property which had formerly belonged to it and thereafter, in July, it issued one hundred bonds of one thousand dollars each, payable in twenty years, drawing six per cent semi-annual interest on the first days of July and January of each year and secured by a deed of trust on all the gas and electric light company's property; that is to say, on all the property except the railway, which had been, as stated, reconveyed to the railway company. Said electric light and railway company exchanged fifty thousand dollars of said last issue of bonds for the fifty thousand dollars of bonds issued by the gas and electric light company in 1888, one of which was held by the appellant, the holders of the old bonds being given no option whether they would accept cash or new bonds for the old ones.

Russell, cashier of the Marion County Savings Bank, exchanged the bond owned by the appellant for one of the

new issue, she says, without her knowledge or consent; which statement Russell does not definitely contradict, saying he thought she knew of it, but that he may have sent it in a hurry without notifying her of the fact.

Interest was paid by the Paris Electric Light & Railway Company on the bonds issued in July, 1894, including the one held by the appellant, until January, 1897; but thereafter no further interest was paid.

It is true, as charged in the reply, that the Marion County Savings Bank, acting by its cashier Russell, regularly credited the appellant's account with interest on her bond, notwithstanding the default made by the company, until January, 1900, and there was evidence for the jury, if material, on the question of appellant's knowledge of the exchange of the first bond for one of the second issue, or of the company's default, until on or about the first day of October, 1899. Russell excuses himself for crediting her with interest after the company defaulted on the grounds that he understood from Noel that the matter of interest would soon be arranged and paid regularly and that he felt sorry about the unfortunate investment of Mrs. Lovelace's money.

We will now set forth the most important facts on which the appellant's case rests, to-wit, the representations made to her when she bought the first bond in 1889. Those representations are all contained in two letters written to her by Russell; and to make them intelligible, it is necessary to state that she had previously bought a bond of the Nevada, Missouri, Gas Company on Russell's recommendation, which was afterwards taken up by said company. The two letters are as follows:

"Palmyra, Mo., 2—2—1888.

"Mrs. A. Lovelace, City.

"Dear Madam: I can let you have $500 first mortgage Nevada, Missouri, Gas Company Bond, interest pays seven

per cent, payable February and August each year, in gold coin, free of taxation. Our Mr. Suter has bought $5,000 of it. We are satisfied that they are A No. 1. It will cost you par $500 and draws interest from maturity. I suggest this as I think you do not have good chances to invest your money.

"Yours truly,
"JOHN W. RUSSELL, Cashier."

"Palmyra, Mo., Nov. 26, 1889.
"Mrs. A. A. Lovelace,
"Dear Madam: I find that Mr. Cook paid his note since you were here. The Nevada Gas Company has called in their bonds. I can get you a one thousand dollar bond of the Paris Gas and Electric Light Company, seven per cent interest, payable December and June in St. Louis, that is just as good, at par. Let me hear as soon as you can if you wish it.

"JOHN W. RUSSELL, Cashier."

Appellant testified that she relied solely on the statements contained in the two letters in making the purchase of the bond of the Paris Gas & Electric Light Company.

At the close of the evidence the circuit court directed the jury to return a verdict in favor of the defendants.

*Reuben F. Roy, George A. Mahan* and *Ben F. Glahn* for appellant.

(1) Fraud is proved when it is shown that a false representation has been made knowingly or without belief in its truth, or recklessly careless whether it be true or false. Bank v. Byers, 139 Mo. 627. (2) If he states material facts as of his own knowledge and not as a matter of opinion or general assertion, about a matter of which he has no knowledge whatever, this distinct, willful statement, in the ignorance of the truth, is the same as the statement of a known falsehood and

will constitute a scienter.   Hamlin v. Abell, 120 Mo. 188;
Dunn v. Oldham, 63 Mo. 181; Caldwell v. Henry, 76 Mo.
254; Lynch v. Trust Co., 18 Fed. Rep. 486.   (3)   The fact
that Russell may have believed from information that the
bond was good, constitutes no defense, because he represented
to plaintiff, as a fact, and as of his own knowledge that they
·were "good as the Nevada bond" which was just paid, and
which he had represented as "A No. 1."   Hamlin v. Abell,
120 Mo. 188.   (4)   Judge Cooley in his work on Torts
says:   "There are some cases however in which a false asser-
tion of opinion will amount to a fraud, the reason being that
under the circumstances the other party has a right to rely
upon it without bringing his own judgment to bear.   Such
is the case where one is purchasing goods the value of which
can only be known to experts and is relying upon the vendor,
who is a dealer in such goods, to give him accurate informa-
tion concerning the same."   Cooley on Torts, p. 484; Picard
v. McCormick, 11 Mich. 68; Kast v. Bender, 25 Mich. 515;
Pike v. Fay, 101 Mass. 134; Cottrell v. Krum, 101 Mo. 397;
1 Story's Equity, p. 223.

*W. M. Boulware* and *F. L. Schofield* for respondents.

(1)   Fraud and falsehood must concur with damage to
support an action of deceit.   The gravamen of the action is
actual fraud and nothing less will sustain it.   "The intention
to deceive is a necessary element of actual fraud.   An inno-
cent misrepresentation is not a fraud, however much damage
it may have caused, although such a misrepresentation might
cause a mistake of fact or failure of consideration which would
avoid the contract; or it might constitute a breach of war-
ranty."   Tiedeman on Sales, sec. 160; Kountz v. Kennedy,
147 N. Y. 124; Hindman v. Bank, 112 Fed. Rep. loc. cit.
944, and cases cited. (Cir. Ct. App. February, 1902). (2) The
action of deceit can not be maintained for a representation

Lovelace v. Suter.

which though false, was made in the honest belief that it was true. To this rule there is the qualification, more apparent, however, than real, noted by Judge WAGNER namely, if material facts are stated as of one's own knowledge about a matter of which he is wholly ignorant, this will constitute the scienter, because he is necessarily conscious of his own ignorance and, therefore, that his assumed knowledge is a mere pretense. Joliffe v. Collins, 21 Mo. 338; Peers v. Davis, 29 Mo. 184; Lindsay v. Davis, 30 Mo. 406; Dunns v. White, 63 Mo. 181; Dulany v. Rogers, 64 Mo. 201. (3) Even had the representation, here complained of as false and fraudulent, been that the bond was "good" or, "good as gold," or, "A No. 1," or, "good as old wheat in the mill," or other like phraseology of praise, still such representations by the vendor as to the value of property sold can not be made the basis of an action even upon implied warranty, much less for an action of deceit. 2 Kent Comm. (11 Ed.), p. 647; Gordon v. Parmalee, 2 Allen 212; Van Epps v. Harrison, 5 Hill. 63; s. c., 40 Am. Dec. 314. (4) The only distinction made by courts in cases of confidential relationship, is to relieve the injured party from the ordinary duty of diligence in informing himself, and holding the other party responsible for known false statements in respect of value, of opinion, or the like, when so relied on. This will be found running through all the cases cited in appellant's brief and, it is believed, in all adjudications on this subject. Cotrell v. Krum, 100 Mo. 397; Wanell v. Kem, 57 Mo. 478; Langdon v. Green, 49 Mo. 363; Macfarland v. Carver, 34 Mo. 195; Pomroy v. Benton, 57 Mo. 531.

GOODE, J.—Several legal propositions were very ably argued by the counsel in this case in discussing the propriety of the direction given by the circuit court in defendant's favor; but we shall confine our remarks to the inquiry whether the letters written to the appellant by the cashier of the bank con-

tained any representation which will support an action like the one before us; an action in the nature of the common-law remedy of deceit, not for breach of warranty or rescission of the contract of sale.

While the respondents earnestly insist that the contention of actual fraud on the part of Russell was waived or withdrawn, we find no withdrawal in the record, but the appellant is certainly urging that contention on this appeal instead of relying on merely legal fraud; hence, we shall treat the case as still involving the issue of intentional fraud. In fact, the theory that the action of deceit will lie for constructive fraud, without the element of moral obliquity, is one we are unwilling to accept; for it has been combated as unsound by the most eminent expositors of the law. Peek v. Derry, 37 Ch. Div. 541; Dunn v. White, 63 Mo. 181; Kountz v. Kennedy, 147 N. Y. 124; Hindman v. Bank, 112 Fed. Rep. 931. It is true that since the decision of the Supreme Court in Hamlin v. Abell, 120 Mo. 188, it can not be doubted that the law in this State is that a party may be held liable in an action for deceit practiced in the sale of property, if he induces the sale by false representations as to a material fact, recklessly made as of his knowledge when he had no knowledge, even though he believed the fact was as stated. This, however, does not depart from the rule that fraud is necessary, as we shall endeavor to make plain; though the distinctions drawn in the reported cases on the subject are often fine and sometimes impalpable.

If one makes a representation as a matter of information —as something that has been represented or imparted to him just as he imparts it to another—no foundation for a case of deceit arises; but if he asserts something as a fact within his own knowledge as an inducement to another person to act, when he possesses no knowledge thereof nor any good reason to think he does, this is presenting the inducement in a false light and enhancing its influence by whatever value the hearer

may attach to the speaker's words. Such a statement is essentially false in the sense of being corruptly untrue and not merely different from the actual fact, and the party making it does so at his peril. The scienter sufficiently appears from the claim of knowledge when there was only ignorance.

In the Hamlin case, which, like the one in hand was based on a sale of commercial paper through alleged false representations, the defendant assigned for error that the lower court had ignored the gist of the action, to-wit, a fraudulent intent on the appellant's part when he made the representation. In dealing with that assignment, the opinion quotes approvingly the following excerpts; the first from Dulaney v. Rodgers, 64 Mo. 201:

"It seems to be established that an action based upon the deceit or fraudulent representations of another, can not be maintained in the absence of proof that the party making them believed, or had good reason to believe at the time he made them, that they were false, or *that he assumed or intended to. convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge. When the above facts are proved, the scienter necessary to maintain an action for deceit, founded on fraudulent representations, is established.*"

The second from Dunn v. White, 63 Mo. 181: "It is not, however, always absolutely necessary that an actual falsehood should be uttered to render a party liable in an action for deceit; *if he states material facts as of his own knowledge,* and not as a mere matter of opinion or general assertion, about a matter of which he has no knowledge whatever, this distinct, willful statement in ignorance of the truth, is the same as the statement of a known falsehood, and will constitute a scienter."

Further along the opinion reads: "While it is true that in all cases it is held that the petition must allege the representations *were. fraudulent,* in all of them it is held that a

statement of material facts by one *as of his own knowledge, not merely as an opinion or general assertion* about a matter of which he knew nothing whatever, a willful statement in ignorance of the truth, is the same as a statement of a known falsehood and will constitute a scienter."

Do the above remarks of the Supreme Court change, or indicate a disposition to change, the long-established doctrine that proof of a guilty scienter is indispensable to the maintenance of an action for deceit? No such conclusion can be logically drawn from them; for the purpose of the court was not to dispense with the scienter, but to point out what may sometimes be sufficient proof of it, namely; an affirmation as of one's own knowledge and not merely his information, opinion or belief, that something material to the business in hand is true, when he has no good reason to believe it is true, and it is in fact false. The consciously false assertion of knowledge which is likely and intended to induce the person addressed to part with his money or property on the belief that the speaker knows the truth whereof he speaks, establishes the scienter as thoroughly as the false assertion that some fact exists which is known not to exist. Deception is practiced in both cases, the intention being to persuade the hearer into making an investment, or taking some other business step, by misleading his judgment.

The real embarrassment in such disputes arises when the basis of the action is a statement or representation made by the defendant as true of his own knowledge, which he not only believed to be true, *but believed with good reason he knew to be true;* in other words an honest mistake not due to gross negligence. In our judgment, a representation of that kind though it may often make a good case to rescind a sale or *ex contractu* on a warranty, can not make out a case of deceit for lack of a scienter. Collins v. Evans, 5 Q. B. 804, 13 L. J. Q. B. 180. Infallible knowledge of facts is never attainable, and it is, or ought to be, enough that one has care-

fully endeavored to learn the truth from appropriate sources and believes he has learned it. Such conduct is very different morally and we think legally, from recklessly asserting something to be true from a vague belief of its truth which the speaker has taken no pains to verify; for gross negligence is closely akin to fraud. Western Bank of Scotland v. Addic, L. R. 1 H. L. 145.

Testing the representation made by Russell to appellant when he proposed the sale of the bond in question by the criterion above indicated, we find no fraud was committed to constitute a ground for this action. A glance shows how widely Russell's representation differs from that made by the defendant in Hamlin v. Abell, which was that the defendant knew the negotiable paper sold was secured by collateral. Here, the sale of the security was entirely by correspondence, and the only statement of Russell to induce the sale was the one contained in the second letter above quoted; that the Paris Gas & Electric Light Company's bond was just as good as the Nevada Gas Company's bond. Considered in connection with all the facts in evidence, that representation falls short of constituting a cause of action for deceit, since it was not a statement of fact as of Russell's own knowledge.

In the first place, it was not a statement of a material fact as that expression is used and understood in opinions in controversies of this kind. It is sometimes a close question whether a representation is to be taken as an expression of opinion or as an assertion of an actual fact. But if we read Russell's letter with reference to the previous letter, which appellant introduced and relied on as part of the fraudulent means employed to sell her the bond, it is plain that he only aimed to give her the benefit of his judgment. In the first letter he said of the Nevada bonds: "We are satisfied they are A No. 1." On the face of it, that statement was undoubtedly nothing more than his opinion. The other letter said the Paris bond was just as good as those of the Nevada com-

pany. It would be unreasonable to interpret that statement to mean that he was giving his own actual knowledge from an investigation of the condition of the Paris company and the property on which the bond was secured, instead of his opinion from the company's standing and the market reputation of its securities.

Nor if we consider the matter from the appellant's standpoint and the way in which she understood Russell's letter, is her case at all helped. She took the letter to give merely his judgment, on which she was willing to risk her money. Mrs. Lovelace testified: "I got his note or letter. When I got the letter I think I wrote him and said *if he thought it safe, to invest in it for me.*" And, again: "I had the utmost confidence in Mr. Russell and his judgment, and I relied on him altogether." . . . "At the time I bought the bond I supposed Mr. Russell had skill in dealing with bonds; I had confidence in him and supposed he knew all about bonds." No pretended facts in regard to the franchises, contracts, assets, liabilities, business or officers of the Paris Gas Light Company, or in regard to how the bond was secured, or as to the value of the property behind it, were laid before the appellant which could have influenced her judgment in any way, and it is clear she did not rely on her own judgment at all when she made the investment, but entirely on Russells'.

Now, right here the distinction to be noted in all deceit cases between statements of facts and of opinion may be treated in another light. It is vital to ascertain whether the plaintiff, in such a case acted on his own judgment or on that of the defendant. If on his own, which was led to an erroneous conclusion because of false but plausible representations about material facts made by the defendant, either with knowledge of their falsity or without knowledge on the subject, there is a good cause of action. But if the plaintiff left the matter to be decided by the defendant, or based his own decision on a statement of the defendant's opinion, there is no cause unless ·

the defendant decided corruptly or gave an opinion which he did not entertain. In the present case, the appellant herself acknowledged she left it to Russell to decide the matter for her and trusted entirely to his judgment, and the only question is, therefore, was there evidence from which the jury might have inferred that he gave a dishonest opinion? None whatever. The bank invested money in seven of that issue of bonds paying ninety-five cents on the dollar therefor; most of them it afterwards sold at a profit of five per cent; some to its own officers and some to outsiders, while some it retained. There is not the least room for doubt that Russell believed those bonds to be a safe investment and that he was doing appellant a favor to sell her one of them; for they bore good interest.

The only circumstances which are questionable were the exchange of the first bond for one of the second issue and the payment of interest by the bank on her bond for four years after the company had defaulted. Russell gave a reasonable explanation of those circumstances; but whether that explanation was true or false, it is manifest they have nothing to do with the main issue of whether the sale was induced by fraudulent representations in the first place. Nor are they relied on for such a purpose; but were pleaded and proven by the appellant to avoid the plea of the statute of limitations by showing that the fraud alleged to have been committed in 1889 was concealed from the plaintiff for ten years by the respondents in the manner stated.

The action for deceit sounds in tort, and there is nothing to show a legal wrong was committed by Russell or any of the defendants in this matter prior to the conversion of the first bond, which is only incidentally related to the cause of action declared on in the petition.

It follows from the foregoing considerations that the circuit court properly granted the peremptory instruction in favor of the respondents and the judgment of that court is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.