## W. W. SNYDER, Respondent, v. C. H. STEMMONS, Appellant.

### Springfield Court of Appeals, November 10. 1910.

1. **ACTIONS: Fraud and Deceit: Finding of Facts: Appeal and Error.** An action for damages for fraud and deceit is an action at law, and where the case is by consent of the parties tried by the court without a jury, the finding of facts are as conclusive on appeal as would be the verdict of a jury.

2. **FRAUD AND DECEIT: False Representation: Mistake.** In an action for damages for fraud and deceit it appeared that defendant had shown his agent, and through his agent had shown plaintiff a certain lot representing that the lot belonged to defendant. Plaintiff relying on this representation purchased the lot and built a residence thereon. It subsequently developed that the lot shown to plaintiff did not belong to defendant, but that defendant owned and had deeded to plaintiff another lot in the same addition. Defendant claimed that he had made a mistake and honestly thought that the lot shown to plaintiff was his lot. *Held*, that before a recovery could be had on the theory of a constructive fraud, it must be shown and found, not only that the representations of ownership were not true and made when defendant had no knowledge thereof, but also that defendant was conscious of the fact that he had no such knowledge. A declaration of law which fails to embody this latter element is condemned.

3. ——: ——: ——: **Scienter.** Before fraud and deceit can be established in any way and made a ground of recovery, a guilty scienter must be shown. This may be actual or constructive. Fraud from any viewpoint implies the doing of a wrong willfully, but an innocent misrepresentation made through mistake without knowledge of its falsity and with no intention to deceive cannot justify an action for damages.

4. ——: ——: **Statements Recklessly Made: Scienter.** To support an action for deceit based on a false representation, a scienter must be shown and where the representation is not true and the statement has been "recklessly made," a recovery may be had where it is shown that the reckless statement consisted in the speaker's passing off his opinion or belief in the guise of positive knowledge when he was conscious of the fact that he had no positive knowledge of the truth of his statement.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

REVERSED AND REMANDED.

*J. H.* and *W. E. Bailey* for appellant.

(1) An unintentional misrepresentation made by the vendor of a piece of real estate is ground for recision of a contract but will not sustain a suit at law for damages. To justify such an action there must be fraud as distinguished from mistake. Dunn v. White, 63 Mo. 181; Langdon v. Green, 49 Mo. 363; Clinkenbeard v. Weatherman, 157 Mo. 105; Owen v. Rector, 44 Mo. 389. (2) An innocent misrepresentation made through a mistake with no intention to deceive without knowledge of its falsity cannot justify a personal action for damages for fraud and deceit. Redpath v. Laurence, 42 Mo. App. 101; Tootle-Hosea & Co. v. Lysaght & Co., 65 Mo. App. 139; Green v. Worman, 83 Mo. App. 568; Dulaney v. Rogers, 64 Mo. 203; Joliffe and Holland v. Collins, 21 Mo. 338; Walch v. Morse, 80 Mo. 573.

*George L. Davis, McReynolds & Halliburton* for respondent.

(1) In legal effect a false representation made by a party without knowledge and with reckless disregard of the truth, or as of his own knowledge and not as a mere matter of opinion or general assertion about the matter in controversy, is the same as the statement of a known falsehood; and will constitute a scienter. Caldwell v. Henry, 76 Mo. 254; Western Co. v. Gates, 190 Mo. 391; Converse v. Blumsch, 14 Mich. 109; Wheeler v. Boars, 15 So. Rep. 584.

STATEMENT.—This was an action for fraud and deceit in which the plaintiff recovered. The petition charged that defendant, through his agent, pointed out to plaintiff a lot on Bales avenue, in Kansas City, Missouri, and falsely and fraudulently represented to him that said lot belonged to the defendant. That, relying on said representations, plaintiff bought said lot, paying seven hundred and eighty-seven dollars therefor, agreeing to erect a home thereon to cost not less than fifteen hundred dollars. That on May 27, 1907, he received a deed to what he supposed was the lot shown him, and thereafter constructed on said lot a home of the value of three thousand dollars. That the lot shown him, and the lot he intended to buy, was in fact lot fifty-two in East Sante Fe, an addition to Kansas City, Missouri; that plaintiff was not aware of the false and fraudulent representations and the deceit practiced upon him by the defendant through his agent until November, 1908, when he was compelled to pay the real owner of lot fifty-two one thousand dollars to obtain title, incurring an attorney's fee of one hundred dollars in defending his supposed title. That the value of lot fifty-two is one thousand dollars and the value of lot fifty-five is four hundred dollars, and that plaintiff has been damaged in the sum of seven hundred dollars, praying judgment for that amount.

The answer was a general denial. Upon trial before the court without a jury, plaintiff recovered a judgment for four hundred and seventy-five dollars, whereupon defendant perfected an appeal to this court. No declarations of law were asked, but the court of its own accord made a finding of facts and gave a declaration of law. The following is the finding of facts as made by the court:

"The court finds that on or about and prior to May 1, 1907, the defendant was the owner of lot fifty-five in Santa Fe Place, Kansas City, Missouri, and that he acquired the title to said property without having seen

same or having same pointed out to him. That, being desirous of selling said lot, he took one Cobb, a real estate agent of Kansas City, and went with him to said Santa Fe Place and showed him a lot which defendant then and there told said Cobb was the lot fifty-five which he owned and that said agent put up his 'For Sale' sign thereon, and that defendant told said Cobb that the lot pointed out was his for the purpose of advising said Cobb which lot was his in order that said Cobb might make a sale of defendant's lot fifty-five, and pointed out lot fifty-two, which defendant did not own, as lot fifty-five, and did so point out said lot in order that said Cobb might point out said lot to any purchaser said Cobb might procure, as the lot of defendant; that the defendant did not know that the lot pointed out, to-wit, lot fifty-two, was not lot fifty-five, but that the defendant made the representation that said lot fifty-two, so pointed out, was his, without any knowledge of whether in fact said lot was lot fifty-five or not and so pointed it out to said Cobb recklessly and without any regard to any investigation on his part as to whether in fact he owned the lot so pointed out (lot fifty-two) or not; that said Cobb thereby had full authority to bind defendant by pointing out said lot fifty-two as lot fifty-five and that the representations thereafter made by said Cobb to plaintiff that lot fifty-two pointed out by said Cobb to plaintiff as lot fifty-five as being owned by defendant were the representations of and binding upon the defendant.

"That thereafter said Cobb procured plaintiff as a purchaser and pointed out to plaintiff said lot fifty-two as lot fifty-five, and told plaintiff that defendant was the owner thereof, and that plaintiff was ignorant of the fact that defendant did not own said lot fifty-two, so pointed out to him as lot fifty-five by said Cobb, and believed said defendant was the owner of said lot so pointed out to him and that said lot was lot fifty-five and relied upon the statements so made by said Cobb

and was deceived thereby and made no further investigation as to the true location of lot fifty-five, and paid the sum of seven hundred and eighty-seven dollars and received a deed from defendant conveying to him said lot fifty-five, believing the lot so pointed out to him (lot fifty-two) was the property conveyed to him in said deed as lot fifty-five, and erected a valuable dwelling house upon said lot fifty-two, laboring under the impression that he had acquired the title thereto from defendant, whom he then and there believed to be the owner thereof. That defendant was not the owner of lot fifty-two so pointed out to plaintiff. That plaintiff did not discover that defendant was not the owner of the lot upon which he erected his dwelling house until long after said dwelling house had been completed by plaintiff. That after learning of the mistake, plaintiff was compelled to pay the sum of one thousand dollars for said lot fifty-two or remove his dwelling house from said lot; that the expense of so moving said house would been several hundred dollars.

"The court further finds from the evidence that at the time the sale was made to plaintiff, lot fifty-five was of the reasonable market value of five hundred and twenty-five dollars, and that lot fifty-two was of the reasonable market value of eight hundred and seventy-five dollars, and in arriving at these values the court has found that both of said lots had a width of thirty-five feet, and that lot fifty-two was worth twenty-five dollars per front foot, and lot fifty-five was worth fifteen dollars per front foot, making a difference in value of three hundred and fifty dollars.

"The court further finds that at the time of said sale plaintiff advised said agent Cobb that he intended to erect a dwelling house uopn said lot fifty-two, so pointed out to him as lot fifty-five, and that it was within the contemplation and knowledge of the defendant that plaintiff intended to make expensive and permanent improvements upon said lot and that plaintiff

was damaged in the further sum of one hundred and twenty-five dollars on that account.

"The court therefore finds that plaintiff has been damaged in the sum of four hundred and seventy-five dollars composed of two items, to-wit: three hundred and fifty dollars difference in value of lot fifty-five and lot fifty-two, and one hundred and twenty-five dollars on account of loss by reason of the improvements placed upon said lot fifty-two by plaintiff. Judgment is accordingly entered for plaintiff in the sum of four hundred and seventy-five dollars. The other party defendant is the wife of the defendant C. H. Stemmons, and the action is dismissed as to her."

The court, of its own accord, gave the following declaration of law:

"The court, upon its own motion, declares the law of this case to be that if the defendant's agent Cobb represented to plaintiff that defendant was the owner of lot fifty-five in Santa Fe Place, an addition to Kansas City, and pointed out lot fifty-two in said addition as lot fifty-five, and represented to plaintiff that said lot fifty-two so pointed out was the property of defendant, and that said Cobb had authority to point out said lot fifty-two as the property of defendant, and that said representation was made by defendant through his agent recklessly and without any knowledge on the part of defendant or his said agent as to whether or not said lot fifty-two so pointed out by said agent was in fact lot fifty-five and was owned by defendant and that said representation was made for the purpose of inducing plaintiff to purchase said lot as the property of defendant, and that the plaintiff did not know that the lot pointed out to him was not lot fifty-five and not the property of defendant and believed said lot so pointed out to him was lot fifty-five and the property of defendant and relied upon said representations, and that, under all the facts and circumstances in evidence, plaintiff had a right to rely upon such representations and

150 App—11

to make no further investigation as to the true facts as to the location of lot fifty-five, and that defendant did not in fact own lot fifty-two so pointed out to plaintiff as lot fifty-five, and that plaintiff, relying upon said representations, accepted a deed to lot fifty-five and paid therefor the sum of seven hundred and eighty-seven dollars to defendant believing that he was actually receiving title to the lot so pointed out to him and was damaged thereby, plaintiff is entitled to recover, and the measure of damages is the difference, if any, between the market value of lot fifty-two and lot fifty-five at the time of such sale, and in addition thereto any loss sustained by plaintiff by reason of his having erected expensive and permanent improvements upon said lot fifty-two, if such improvements were within the contemplation of the parties to said sale at the time said representations and sale were made.''

NIXON, P. J. (after stating the facts.)—At the threshhold of the investigation of this case we are to recognize that the case, though an action at law for fraud and deceit, was by consent of parties tried by the court without a jury. In such case, it being an action at law, the findings of fact are as conclusive on appeal as would be the verdict of a jury. [Baumhoff v. St. Louis & K. R. Co., 171 Mo. 120, 71 S. W. 156.]

Appellant complains of the declaration of law given by the court for the reason ''that it omitted the proposition that the representation·must be made in utter disregard of its truth or falsity *and that the defendant must be conscious of the fact that he had no such knowledge.*'' That this is an essential element of fraud in cases where the vendee is allowed to recover for representations made by the vendor which are false and made in utter disregard of the truth without any knowledge whatever.

It must be remembered that fraud and deceit are charged in the petition in this case and constitute the

gravamen of the action. Before fraud or deceit can be established in any case and made a ground of recovery, we must have discovered a guilty scienter. [Lovelace v. Suter, 93 Mo. App. 1. c. 440, 67 S. W. 737.] True, this may be either actual or constructive. Fraud from any viewpoint implies the doing of wrong willfully. [People's National Bank v. Central Trust Co., 179 Mo. 1. c. 662, 78 S. W. 618.] "An innocent misrepresentation made through mistake without knowledge of its falsity, and with no intention to deceive, cannot justify a personal action for damages." [Walker v. Martin, 8 Mo. App. 560; Dulaney v. Rogers, 64 Mo. 201; Dunn v. Oldham, Adm'r, 63 Mo. 181; Hartford Ins. Co. v. Matthews, 102 Mass. 221; Cabot v. Christie, 42 Vt. 121; Marsh v. Foster, 40 N. Y. 569; Redpath v. Lawrence, 42 Mo. App. 1. c. 110.]

In the case of Dulaney v. Rogers, 64 Mo. 201, our Supreme Court said: "It seems to be established that an action based upon the deceit or fraudulent representations of another, cannot be maintained in the absence of proof that the party making them believed, or had good reason to believe at the time he made them, that they were false, or that he assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge. When the above facts are proven the scienter necessary to maintain an action for deceit, founded on fraudulent representations, is established."

In the case of People's National Bank v. Central Trust Co., supra, the court, referring to the case of Buford v. Caldwell, 3 Mo. 477, said: "What is said in that case cannot be construed to mean any more than that if the facts are of such a nature as that a man is presumed to have personal knowledge of them and is presumed to know that the person with whom he is dealing relies on him for information he is as guilty if he makes a false representation concerning the mat-

ter, when he is conscious that he knows nothing about it, as he would be if he should state what he knows to be untrue.''

In the case of Koontz v. Kaufman, 31 Mo. App. 397, the language of Napton, J., in Dulaney v. Rogers, is quoted, i. e., that the plaintiff must prove that the defendant ''assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge,'' and the court said: ''So the instruction approved by the court contained the essential requirement.'' Then the following language of Norton, J., in Walsh v. Morse, 80 Mo. l. c. 573, is quoted: ''The generally received doctrine now is that, in order to support a personal action for fraudulent representations, it is not sufficient to show that a party made statements which he did not know to be true, and which were in fact false. There must be fraud as distinguished from mere mistake. It is not, however, always absolutely necessary that an actual falsehood should be uttered to render a party liable in an action for deceit; if he states material facts as of his own knowledge, and not as a mere matter of opinion, or a general assertion about a matter of which he has no knowledge whatever, this distinct, willful statement, in ignorance of the truth, is the same as a known falsehood, and will constitute a scienter.'' After this quotation, the court says: ''In this it is to be observed that the assertion of a fact as of his own knowledge is qualified by the words 'in ignorance of the truth.' This was necessarily so to make it harmonize with the holding of Napton, J., supra.'' Then follows this important passage: ''Applying these rulings to the instructions under review, it will be found that while they were framed with some regard to the rule, yet they are so artfully (not in the invidious sense) drawn, as to not unreasonably warrant the jury in making the inference that if defendants stated that they owned the property, as of their own knowledge, and that state-

ment turned out to be untrue, the scienter was proved without more.  They do not contain the essential words, or the equivalent, 'though conscious that they had no such knowledge,' or that they were aware of the fact 'that they did not know,' or that it was 'known to be false,' and the like.  The fraudulent intent being the gist of the action, the defendants were entitled to have this issue of fact distinctly and sharply submitted to the jury, in such perspicuous language as to leave no just grounds for their minds being misled.''  [Koontz v. Kaufman, 31 Mo. App. 1. c. 419-420.]

The following appears in the case of Dunn v. White, 63 Mo. 181: ''It is not, however, absolutely necessary that an actual falsehood should be uttered to render a party liable in an action for deceit, if he states material facts as of his own knowledge, and not as a mere matter of opinion or general assertion, about a matter of which he has no knowledge whatever, this distinct, willful statement in ignorance of the truth, is the same as the statement of a known falsehood, and will constitute a scienter.''  Later on, in the same opinion: ''A statement of material facts by one as of his own knowledge, not merely as an opinion or general assertion about a matter of which he knew nothing whatever, a willful statement in ignorance of the truth, is the same as a statement of a known falsehood and will constitute a scienter.''

In the case of Lovelace v. Suter, supra, we find this language: ''The consciously false assertion of knowledge which is likely and intended to induce the person addresed to part with his money or property on the belief that the speaker knows the truth whereof he speaks, establishes the scienter as thoroughly as the false assertion that some fact exists which is known not to exist.''

Again in the case of Western Cattle & B. Co. v. Gates, 190 Mo. 1. c. 405, 89 S. W. 382: ''One who makes representations which he does not know to be true, and

conscious of the fact that he has no knowledge on the subject, to another whom he knows has no knowledge as to the truth or falsity of the representation, is as much guilty of fraud as if he had actual knowledge of the falsity of the statement, and if the party to whom the representation is made relies upon it, and is injured thereby, he is entitled to recover from the party making the representation.'' The Supreme Court holds that the plaintiff's instructions embodied the law, and the second of these told the jury that defendant was liable if he made the representations without knowing whether they were true or false, though conscious that he had no such knowledge, but intending to convey the impression that he had such knowledge.

We find the law stated as follows in 20 Cyc. 24-27: ''It is well settled that to support an action of deceit based on a false representation, a scienter must be proved; that is, the representation must either (1) be false of the knowledge of the party who makes it, or (2) must be made as a positive assertion calculated to convey the impression that he has actual knowledge of its truth when in fact he is conscious that he has no such knowledge. It is generally held too that if the speaker honestly believes his representation to be true, he is not liable, an honest mistake or error in judgment being regarded as insufficient grounds on which to base a charge of fraud.'' (Citing Lovelace v. Suter, supra, and other cases.) ''But the speaker's belief will not in all cases protect him from liability in an action for deceit, as when he makes the statement recklessly.'' ''It is not always necessary that the speaker should actually know that his representation is false. If the statement is of a matter susceptible of accurate knowledge and he makes it recklessly, without any knowledge of its truth or falsity, and in the form of a positive assertion calculated to convey the impression that he knows it to be true, the representation is equally fraudulent. The rule just stated applies, although the speak-

er honestly believes that the fact which he represents
as existing actually does exist.'' A footnote, refer-
ring to what is said above in the sentence just pre-
ceding the last sentence quoted, appears on page twen-
ty-seven, as follows: "This rule is based upon the
principle that the speaker is conscious either that he
knows or that he does not know the truth of what he
states, and that when, conscious of his ignorance, he
assumes to have knowledge, he acts in bad faith and
must be held to warrant the truth of his assertion, and
so is liable in an action for deceit."

It is clear that the declaration of law given by the
court was erroneous for the reason that it did not recog-
nize the essential distinction between actionable fraud
and a mistake. This declaration of law was based upon
the finding of the following facts: "That if the defend-
ant's agent, Cobb, represented to plaintiff that defend-
ant was the owner of lot fifty-five in Santa Fe Place,
an addition to Kansas City, and pointed out lot fifty-
two in said addition as lot fifty-five and represented
to plaintiff that said lot fifty-two so pointed out was
the property of the defendant . . . and that said repre-
sentation was made by defendant through his agent
recklessly without any knowledge on the part of de-
fendant or his said agent as to whether or not said lot
fifty-two so pointed out by said agent was in fact lot
fifty-five and was owned by defendant," etc. This dec-
laration of law is defective in that it fails to detail a
further fact, namely, that the defendant knew such
fact of ownership to exist and so stated in positive
terms and as of his own knowledge, because the fraud
in such a case (involving statements "recklessly
made") consists in passing off one's opinion or belief
in the guise of positive knowledge. If the defendant
had affirmed positive knowledge of his ownership when
he had no positive knowledge, and the purchaser had
relied upon the assertion, then responsibility would
have been visited upon him because in such case he

would have been conscious that he was ignorant concerning the subject-matter of which he spoke, yet falsely asserting that it was within his own personal knowledge. [Riley v. Bell, 120 Iowa 618, 95 N. W. 170.] "This rule is not an exception to, but an application of, the principle that actual fraud must be shown to sustain an action of deceit; and it is not in conflict with the rule requiring a scienter. [20 Cyc. 29n.]

To uphold this judgment on the findings of facts would be to abolish well-established legal definitions of fraud and deceit and their constituent elements and obliterate the distinction between representations consciously or knowingly false and those not so made. It is apparent that plaintiff was injured and is entitled to reparation for whatever losses he sustained, but courts cannot, in order to meet hard cases, allow well-grounded principles to be uprooted and overthrown.

The answer in this case does not set up any claim of appellant to lot fifty-five, but is a general denial. Hence, under the view we have taken and the conclusions reached as to the law, the question as to the proper measure of damages in this case is not now presented for our consideration. In the event of another trial, the pleadings could be amended and another state of facts developed in which case any discussion of the measure of damages at this time would be premature.

From what has been said, it is apparent that the judgment should be reversed and the cause remanded, and it is so ordered. *Cox, J.,* concurs; *Gray, J.,* having been of counsel, not sitting.