ORE CITY CO. v. ROGERS.   (No. 1657.)

(Court of Civil Appeals of Texas.   Texarkana.
Nov. 20, 1916.   Rehearing Denied
Nov. 30, 1916.)

1. VENDOR AND PURCHASER ⬦═36(1)—RESCIS-
SION—FRAUD.

Where town-site company sold lots stating
a railway under construction would build its
depot on its right of way at a point opposite
the lots, the buyer was not entitled to rescind
when the railway located its depot 100 feet
away from such point; the railway not being
connected with the town-site company, and no
fraud or collusion appearing.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 40, 52; Dec. Dig. ⬦═
36(1).]

2. FRAUD ⬦═13(1)—REPRESENTATIONS—FAL-
SITY.

In order that representations may warrant
relief, they must be false, and false at time of
representation, and a change in circumstances
making representations incorrect does not ren-
der them fraudulent, where originally made in
good faith.

[Ed. Note.—For other cases, see Fraud, Cent.
Dig. § 3; Dec. Dig. ⬦═13(1).]

3. COVENANTS ⬦═1.

The sale of lots by a town-site company,
accompanied by a statement that a railway
under construction would build its depot on
its right of way at a point opposite the lots,
was not a contractual obligation in the nature
of a covenant to erect the depot; the railway
not being connected with the town-site com-
pany.

[Ed. Note.—For other cases, see Covenants,
Cent. Dig. § 1; Dec. Dig. ⬦═1.]

Appeal from District Court, Gregg County;
W. C. Buford, Judge.

Suit by the Ore City Company against J. C.
Rogers, in which defendant pleaded in re-
convention. From judgment for defendant,
plaintiff appeals.   Reversed and rendered.

The appellant, a town-site corporation,
brought the suit to recover of appellee on his
two notes executed in part payment of the
purchase price of two lots in the town of Ore
City, and to have decreed foreclosure of the
vendor's lien expressly retained on said lots.
Appellee, besides his answer, pleaded in re-
convention against appellant, seeking to have
decreed rescission of the contract of pur-
chase and sale, or in the alternative to re-
cover damages, upon the ground that it was
induced by fraud and deceit.   He alleged, as
material here to state, that:

"At the time of the contract of purchase and
sale of said lots the plaintiff represented unto
the defendant that the depot of the railway
would be built opposite said lots, and furnish-
ed the defendant with a blueprint map and plat
of said Ore City showing the blocks and lots
and railway and where the depot was to be
built, and promised that said depot was to be
built as shown on said map and blueprint. De-
fendant, relying upon the said promise and
agreement that said depot be built at the place
opposite said lots as represented by the plain-
tiff, purchased said lots in good faith, agree-
ing to pay the consideration, both cash and
notes, therein expressed. Defendant says and
represents unto the court that the plaintiff
practiced a fraud on him in said transaction,
and that the depot was not built at the place

they represented to him that it would be built
at, but was built at a different place, and that
the defendant would not have purchased said
lots if he had known that said depot would not
be built at said place it was to be built, which
fact was known to the plaintiff, and, by reason
of the fact that said depot was not built at the
place it was to be built at, that the property
was of very little value."

The trial was before the court without a
jury; and judgment was rendered in favor
of the defendant, decreeing cancellation of
sale of the property.

The court made the following findings of
fact and conclusions of law:

"I find as a fact that on October 15, 1911,
the defendant purchased from the plaintiff Lots
Nos. 25 and 26 in block No. 5 as laid down on
the map of Ore City, in Upshur county, Tex.,
and that the defendant paid cash in the sum of
$167.70, and executed his two certain vendor
lien notes as balance of said purchase price for
the sum of $166.65 each, payable one and two
years, respectively, from date. I find that the
representative of the plaintiff gave to the de-
fendant, J. C. Rogers, a blueprint of Ore City
showing the location of the lots and represent-
ed by the blueprints where the depot would be
built in said Ore City across the street from
the lots, and the blueprints showing that the
depot would be built at such place, and that
said representations as to the depot were made
by the agent of the plaintiff as an inducement
to sell the defendant the said lots. And I find
as a fact that said depot was not built at the
place where they represented it would be built,
and that the defendant, J. C. Rogers, would not
have bought the lots had he known the depot
would not be built at the place marked on said
blueprint where it was to be built; that as soon
as the depot was built at a different place I
find the defendant, J. C. Rogers, asked for a
rescission of the contract from the plaintiff,
which the plaintiff refused.

"Conclusion of Law.

"That the above facts constitute fraud in
the purchase and sale of the lots, entitling the
defendant to a rescission of the contract and
sale and to all rights thereunder."

To make clearer the findings of the court
the further statement is made, as disclosed
by the evidence, that the Port Boliver Iron
Ore Railroad was under construction at the
time of the laying out of the town of Ore
City and at the time of the sale of the lots to
appellee.   The roadbed was being graded,
and the laying of the steel rails had begun
at the lower or south end of the road.   The
survey route and a right of way extended
from the city of Longview on the south to
the point of the proposed town of Ore City.
The town-site company is not shown to have
any connection or relation with the con-
struction of the railway or railroad company,
and it does not appear that the railroad com-
pany has any interest in the town-site sur-
vey.   It seems that the town-site company
owned the land that the town was laid out
on, except a survey route or right of way
through the same which was owned by the
railway company before the laying out of
the town site.   The only evidence in the rec-
ord respecting the map and the marking on
it, and as to the platting of the town site,

is the testimony of the witness Little, managing agent of the town-site company. The testimony of Little is to the effect that, before beginning the laying out of the town site, he went to the chief office of the Port Boliver Iron Ore, with the view of obtaining information as to the proposed location of the depot at the terminal point of the road, which would be included within the town of Ore City. The blueprint map of the railway company was by the railway engineer exhibited to him, showing the railway survey and the marked or designated point for a depot on the right of way at the terminus of the road. The witness then told the engineer that the town-site company wanted to locate on the ground the main street of the proposed town of Ore City at a point where the railway company was to build its depot. The railway engineer, in accordance with the request, then came on the ground and pointed out the place on the right of way selected and established for the proposed location of the depot. The railway engineer, assisted by the town-site engineer, then ran out on the ground from the depot point first the main street and then the parallel streets of the town. The railway engineer, as the witness says, "drew all the railway points," and the town-site company "platted the rest of the town from that point." "Any one," the witness said, "had as much chance to get the information as we had to get the information as to where the depot was to be located." The plat or map is not in the record, but the evidence indicates that the plat as drawn exhibited and showed the streets, blocks, and lots, with their numbers, and the railway route or way through the town, and a marking on the map, on the right of way of the railway company, the words, as given by the court, "Where the depot would be built," or "The depot would be built at such place."

Appellee testified that before the purchase of the lots he was never on the town site and never in that part of the country, and had no information as to the location of the depot, except such as the blueprint map exhibited to him by the selling agent disclosed to him. Appellee knew at the time of the purchase of the lots that the proposed railway had not entered nor been completed to Ore City. Appellee purchased the lots with the view of conducting a business thereon. And there is proof that a lot opposite the depot is of more value than a lot not fronting the depot. Appellee proved the simple fact that after the date of his purchase of the lots the railway company erected its depot on its right of way in Ore City, at a point opposite block 6 at the head of Main street, about 100 feet above the point marked on the map in evidence. The exact date the railway erected its depot is not given, but inferably it was either in December or January following October 15th, the date of appellee's deed. The subsequent change of location of the depot was by the railway company, and there is an absence of any evidence tending to show that appellant had authority to locate the depot, or knew at any time of a purpose or intent of the railway company to change the location of the depot to another point in Ore City.

Campbell & Wyche and F. J. McCord, all of Longview, for appellant. Martin & Nelson, of Longview, for appellee.

LEVY, J. (after stating the facts as above). Appellant by its assignments makes the point that the appellee may not predicate, as a matter of law, any right to rescind the transaction and recover the amount paid by him on the purchase price of the lots upon the facts found by the court. Looking to the precise facts found by the court, the selling agent of the appellant town-site company exhibited to appellee, with the view of inducing him to purchase lots in the town site, a blueprint or plat of the newly laid out town of Ore City, which blueprint or plat exhibited and showed the survey subdivided into streets and blocks and lots with their numbers, and the railway route and a point on the railway right of way designated and marked, as given by the court, with the words, "Where the depot would be built," or "The depot would be built at such place." And appellee, as further found by the court, purchased of appellant, through the agent, lots 25 and 26 in block 5, relying upon the representation on the blueprint map that the said two lots were located across the street from and facing the point marked "Where the depot would be built," or "The depot would be built at such place." Within two or three months after the sale of the lots the railway company erected its depot at a point opposite block 6 and above the point marked on the map. It is not shown that appellant had authority to locate or change the proposed location of the depot.

[1, 2] The case must stand, it seems, as ground for fraud and deceit or misrepresentation, upon the determination of the nature and effect of the marking on the map the words, as given by the court, "Where the depot would be built," or "The depot would be built at such place." The words were marked, it is observed, upon the survey route or right of way of the railway company, and not upon the town property of appellant as separated from the railway right of way. The words quoted, as they appeared on the map, do not necessarily convey to the mind of the purchaser of the lots any statement or representation that the depot building was actually or then being erected upon the right of way at the point marked on the map. And in the light of the facts, outside of what appears on the face of the blueprint map, it must be regarded that appellee knew that no such meaning was intended to be attached or understood by the words; for the records admit that appellee

understood that at the time of the sale of the lots the proposed railway had not entered and was only being constructed in the direction of Ore City. And, as it does not appear from the words on the map, nor from the circumstances outside the face of the map, that the town-site company had authority to locate the depot for the railway company, the appellee would be presumed to have known that the power and authority to locate the depot on its survey route or right of way rested with the railway company. So then the scope of the representation according to the map, in the clear light of the record, may be regarded as relating to a future action of the railway company, afterwards to be performed by such railway company, respecting the proposed location of its depot on its survey route or right of way situated within the newly laid out town site of Ore City. Appellee having knowledge of the scope, as construed, of the representations according to the map, he may only be regarded as believing or relying upon the fact as true that the town-site company had information from the railway company as to the place where it would locate its depot when the railroad entered Ore City. The precise representations thus made were not, in the evidence, false. It appears without dispute that before the platting of the town site by the appellant the authorized railway engineer went upon the ground and located the place where the railway company proposed to build the depot, and "drew all of the railway points," and that it was in virtue of this act and upon this information that the town-site company marked on the plat the very point that the railway engineer, acting for the railway company, located on the ground. And there is no evidence to show collusion or wrong between appellant and the engineer, nor that the railway company did not intend at the time to actually erect its depot at the point so designated. In order that representations may warrant relief, they must be false, and false at the time of the transaction. 2 Pom. Eq., § 876; 12 R. C. L. §§ 10, 82; 20 Cyc. p. 12; Jackson v. Stockbridge, 29 Tex. 394, 94 Am. Dec. 290; Farrar v. Churchill, 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246; Lovelace v. Suter, 93 Mo. App. 429, 67 S. W. 737. And if the original transaction between appellant and appellee was made without design and in good faith at the time of the making, as appears from the evidence, it cannot be rendered fraudulent and rescindable by subsequent events, such as in the instant case, of change by the railway company of the proposed site for location of its depot. Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472,

31 Am. St. Rep. 39; Electrical Works v. Railway Co., 29 S. W. 412.

The Titterington Case, supra, held, it is true, that the railway company may be held for damages, but it was upon the ground, not of tort, but for breach of a contractual obligation in the nature of a covenant. And the instant case is distinguishable from the case of Henderson v. Railway Co., 17 Tex. 560, 67 Am. Dec. 675. There the events represented or assured would be done in the future, were in the nature of a positive representation by the agent of the railway company as to what the railway company would do, and were such undertakings which the railway company could fulfill. In the instant case the effect of the representation was a mere expression of opinion as to what the railway company intended to do in the future, and was not an act or event which depended entirely, as in the Henderson Case, supra, upon the acts of the party making the representation.

Appellee relies upon the case, among others similar, of Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, as applicable and illustrative of appellee's right to rescind. In this case and the similar ones the representation of the vendor that he had a good title and could make a good title was false in fact and untrue at the time of the representation. The difference between a statement that something exists at the time which does not and a statement or representation that some other party may or would do something in the future, like the instant representation, is obvious. Therefore the instant case is readily distinguishable from the cases relied on by appellee.

[3] Since the facts do not establish fraudulent misrepresentations, there is not afforded, it is believed, grounds for rescission, or to form the basis of an action for damages, as alternately pleaded by appellee. Appellee predicates his cross-action, it is remarked, on tort, and not in contract. A suit for damages as for nonperformance of a covenant or promise may not be maintained on the precise representation or statement relied on and proven, for that it is not, and does not have the legal effect of, a contractual obligation in the nature of a covenant to erect or maintain a depot either on the property of appellant or in the immediate front of appellee's lots.

The judgment therefore should be reversed, and judgment here rendered in appellant's favor for the amount sued for and for foreclosure of the vendor's lien, with costs of the court below and of this court to be taxed against appellee; and it is accordingly so ordered.