JALMER LYYTINEN DOING BUSINESS AS INTERSTATE TIRE COMPANY, RESPONDENT, v. GILLETTE RUBBER COMPANY, A CORPORATION, APPELLANT.—S. W. (2d) —.

Kansas City Court of Appeals. October 7, 1935.

*James Daleo* for respondent.

*Carl H. Langknecht* for appellant.

TRIMBLE, J.—The action herein is to recover damages based on a charge of fraud and deceit in the sale and delivery by defendant to

plaintiff of 2381 pairs of "skid grips" at the price of sixty-five cents per pair aggregating $1482.65; and plaintiff also sued for $186 paid for freight on said merchandise from Wisconsin to Kansas City where plaintiff's business is located, but as this item for freight was afterward remitted by plaintiff, no further mention need be made of it.

There is no dispute over the number bought or price paid for the skid grips. The contest is over whether there was any fraud and deceit and whether the merchandise was defective as plaintiff charges.

The petition alleges that defendant, "being desirous of selling to plaintiff said skid grips, did, with intent to deceive and defraud plaintiff, falsely represent to him that said skid grips were in A-1 condition and 100% perfect and that they would withstand all the tests that they would be put through."

The petition further alleged that as the defendant, its servants, agents and employees well knew, the said grips were not as represented, and on the 10th day of December, 1931, plaintiff found that the merchandise was not as represented. Wherefore, plaintiff was damaged in the sum of $1482.65 for which judgment was sought.

Defendant's answer set up that the merchandise was delivered in good condition, and then denied each and every allegation. The jury found for the plaintiff and after the *remittitur* of the freight was entered, judgment was rendered for plaintiff in the sum of $1482.65; the defendant's motions for new trial and in arrest being overruled; whereupon defendant appealed.

The plaintiff's evidence is that plaintiff, Lyytinen, for at least five years has been in business at 1420 Grand Avenue, Kansas City, Missouri, under the name of Interstate Tire Company, selling new and used tires and "job lot merchandise;" that in July, 1931, he, dealing with an agent of defendant discussed the purchase of the merchandise and through negotiations, bought the merchandise, which was in Eau Claire, Wisconsin, and the same was shipped from there to plaintiff's place of business in Kansas City and was paid for about December 8, 1931; that plaintiff began selling a few pairs, but they broke easily and they were returned, and others would not stand the strain of ordinary use and they were returned, and plaintiff had to refund the money for them. He then opened the boxes, and found some with links broken. He tried others on automobiles, but after driving for a few blocks, they would give way and break, others would give way and break when he would bend them a little. He notified the company of this unsatisfactory and bad condition, but nothing was done by it about it.

On cross-examination he admitted he frequently bought job lots of merchandise that are sold for less than regular price; that the merchandise in question here ordinarily brought seventy-five cents a pair, but he bought these at sixty-five cents a pair, f. o. b. the factory. Plaintiff testified he relied on the agent, Mr. Nugent's word as to

the condition of the tire skids in the factory, having known him in business and in previous dealings for several years and had found him trustworthy. He had opportunity to see and examine the sample obtained by Nugent in charge of defendant's Kansas City branch office, which sample plaintiff knew was obtained from another store in Kansas City. Plaintiff found that the sample would break easily, but Mr. Nugent told him that sample had lain in the merchandise store until it had deteriorated and "hasn't got the life in it;" that Nugent said the "merchandise at the factory is newer stuff, not air exposed, and they wouldn't do that." Nugent further said the articles at the factory "are A-1 so far as service is concerned, they are A-1." "They will give the service." Of the samples that broke, he said, "They will break on account of the rubber-covered chains being air-exposed." Plaintiff says he took Nugent's word from previous dealings and thinking he was all right, accepted the goods sold (which were in the factory in Wisconsin), on that condition. He said Nugent sold the skid grips representing them to be better than the samples, and with the understanding that "they were close-out merchandise on account of some patent infringements, so they couldn't build any more chains, so they wanted to sell them out."

Plaintiff, knowing that the sample Nugent had, broke under the test plaintiff gave it, made no examination of the merchandise when it came from the factory, but immediately started selling it and paid defendant's bill, for what they had sold. When plaintiff found it was unsatisfactory, he did not send any of it back.

The sample referred to hereinabove was not carried about by said agent, Nugent, but, to the knowledge of all, including plaintiff, was sent out for and obtained from another shop not far away, so that plaintiff knew where it was obtained, and knew it was subject to the conditions to which it was exposed in said shop and, therefore, this could not be regarded as a *fraudulent* representation of a perfect sample of what was in the factory.

The foregoing is the evidence offered by plaintiff in support of an action based on fraud and deceit.

At the close of plaintiff's case, defendant asked a peremptory instruction to find for defendant which was overruled. Defendant did not stand on its demurrer, but proceeded to introduce evidence in its behalf. Upon reading it, we are unable to find anything to aid plaintiff's evidence in regard to plaintiff's charge of fraud and deceit on which the case is based. At the close of the entire case, defendant again offered a demurrer to plaintiff's case, but it was also overruled. The first demurrer having been waived by defendant proceeding with its evidence, it is only the ruling on the second demurrer that can be considered on this appeal.

A careful consideration of all the evidence, in our view, fails to establish fraud and deceit. There is no evidence to support the charge that defendant or its agent, Nugent, knew that the representations made, whatever they may have been, and concerning which there is a serious dispute, were knowingly false or made with intent to defraud and deceive. Even if plaintiff's contention concerning representations be accepted as true, it would seem that plaintiff's proof, if accepted as true, might support an action for breach of contract, but not an action for fraud and deceit. [Stark Bros. Nursery & Orchards Co. v. Mayhew, 141 S. W. 433; Stratton v. Dudding, 147 S. W. 516; Diehl v. Charles, 8 S. W. (2d) 1082, 1083; Snyder v. Stemmons, 131 S. W. 724; Stufflebean v. Peaveler, 274 S. W. 926, 929; 55 C. J. 138, Sec. 101; 27 C. J. 44.] There is a clear distinction between an action for fraud and deceit and an action for breach of contract or warranty. [55 C. J. 654, par. 668.]

We have carefully examined the cases cited by respondent, but they are either cases where fraud and deceit were clearly shown in the evidence, or are cases not in point on the question herein raised. We are constrained to reverse the judgment outright. All concur.