CLINKENBEARD et al., Appellants, v. WEATHERMAN et al.

Division One, June 12, 1900.

1. **Setting Aside Deed:** CONVEYANCE TO THIRD PARTY. The three plaintiffs bought land, and the deed was made to two of them, and then, in adjustment of their equities, a conveyance was made by those two grantees to the other one, who was their daughter, of the remainder after their death, and all three join in a suit that the deed be set aside because of fraud and misrepresentations in the sale. *Held,* that the plaintiffs having tendered a deed to the defendants, being a restoration of all they received and of all that defendants parted with, there has been no such transfer of the title as precludes relief.

2. ———: FRAUDULENT REPRESENTATIONS: CAUSE OF ACTION. The plaintiffs lived in St. Jóseph, Mo., and in their petition allege that for $3,000 they were induced to buy 200 acres of land in Taney county, without seeing it, on the representations of defendants, who falsely stated that it was bottom land, worth $35 or $40 per acre, seven miles from the county seat and two miles from another town, on good and smooth roads leading thereto; that eighty acres of it was in cultivation, the rest level and capable of easy cultivation, and all of it well fenced; that there was a good five-room house thereon and a barn seventy feet square and a good orchard. The petition further stated that said land was afterwards discovered by them to be, in fact, rough and poorly improved, 15 miles from the county seat and seven miles from the other town, and having a two-room box house, no orchard, thirty acres in cultivation, only a small tract under fence, and a small log barn; that it was all very poor land, rough, in a sparsely settled region, and reached by very rough roads. That plaintiffs had tendered back their deeds and demanded a return of their money; and that defendants were otherwise insolvent. *Held*, that the petition stated a good cause of action for a rescission of the contract and a judgment for plaintiffs for the money paid by them for the land.

Appeal from Taney Circuit court.—*Hon. James T. Neville,*
Judge.

REVERSED AND REMANDED.

*William H. Johnson* for appellants.

(1) The defendants being insolvent, and the plaintiffs having sought and been refused a rescission of their contract of sale, and there being no adequate remedy at law, the plaintiffs were entitled to equitable relief. The bill clearly states a cause of action and it lay within the power of the court sitting as a court of equity to grant any relief consistent with the pleadings. Mason v. Black, 87 Mo. 347. (2) Courts of equity will grant a wholesome relief, declare the property a trust, or grant a money judgment. Rutherford v. Williams, 42 Mo. 19; Ames v. Gilmore, 59 Mo. 537; Henderson v. Dickey, 50 Mo. 161.

*Groom & McConkey* and *W. G. Robertson* for respondents.

MARSHALL, J.—This is a suit in equity to cancel a conveyance of land in Taney county and to recover the purchase price paid.

The name of James A. Weatherman appears as one of the defendants in this case, but as he does not appear to have been served with process and as his name is omitted from the second amended petition, and he is not referred to therein in any manner, it is not clear why his name should appear as a defendant in the record. ·

The plaintiffs are Louis Clinkenbeard, Anna Clinkenbeard, his wife, and Luella Clinkenbeard, their daughter. The defendants are Solomon Kornbleet, Katie Kornbleet, his wife, and Hershell Bartlett. The cause comes here on plaintiff's appeal, upon a second amended petition, a demurrer thereto, which was sustained and final judgment rendered for the defendants. These pleadings are as follows:

### SECOND AMENDED PETITION.

"Now comes the plaintiffs Louis, Anna and Luella Clinkenbeard and for their cause of action state: That on or about the 7th day of November, 1894, Solomon Kornbleet was the owner of the following lands situated in Taney county, Missouri, to-wit, the E. 1-2 of N. E. 1-4, N. W. 1-4 of N. E. 1-4 of sec. 33 and W. 1-2 of N. W. 1-4 of sec. 34 in twp. 22 n. of range 21 w.

"That on or about the 6th day of November, 1894, said Kornbleet made offers to plaintiffs to sell them the above land and represented to plaintiffs that said land was worth $35 to $40 per acre; that 80 acres of said land was in cultivation; that there were good wire fences around the whole 200

acre tract; that there was upon said land a good five-room frame house nicely plastered and in good repair; that there was upon said land a good barn 70 feet square in good repair; that there was upon said land a good large apple and peach orchard; that all of said land was level and capable of cultivation; that the said tract lay in a good neighborhood, seven miles from the town of Forsyth, and 1 1-2 miles from Kirbyville; that the roads leading thereto were good and smooth; and that said land was reasonably worth the sum of $3,000.

"All of said statements so made by Solomon Kornbleet were false and fraudulent, and said Kornbleet well knew them to be false and fraudulent and wholly untrue. But that said Kornbleet made said false representation for the sole purpose of cheating, defrauding, misleading and deceiving these plaintiffs.

"That these plaintiffs were residents of the city of St. Joseph in this State and had never seen said land and did not inspect same, but wholly relying on the false representations of defendant Kornbleet and believing said representations to be true, did buy said land from said Kornbleet at the sum and price of three thousand dollars, and did pay said Kornbleet the sum of twenty-four hundred dollars, and did execute to said Kornbleet a promissory note for the sum of six hundred dollars for the balance of said purchase price. That at the request of Solomon Kornbleet said note was made payable to the order of Katie Kornbleet, the wife of Solomon Kornbleet, and dated November 7th, 1894, due one year from date and secured by deed of trust executed on November 7th, 1894, conveying the above described land so purchased by plaintiffs to Hershel Bartlett, trustee, for the securement of said note above for the sum of six hundred dollars.    This deed of trust is recorded in the Taney County Recorder's office, at book 2, page 153.

"That on the 8th day of November, 1894, Solomon and Katie Kornbleet gave plaintiff Louis Clinkenbeard a deed to said land which is recorded in book 10, at page 74, in the recorder's office of Taney county, Mo.

"That afterwards, in the adjustment of equities between plaintiffs, Louis and Anna Clinkenbeard gave Luella Clinkenbeard, their daughter, a voluntary deed to said land to take effect in possession after the death of her father, Louis Clinkenbeard.

"That about the month of April, 1895, plaintiff, Louis Clinkenbeard visited Taney county and for the first time inspected said land so bought of Solomon Kornbleet, and then discovered for the first time the fraud and deceit practiced upon plaintiffs, and that all the representations and statements made by said Solomon Kornbleet were false and wholly untrue. That said land was rough and poorly improved with a two room box house, only about 30 acres in cultivation, no orchards, only a small tract under fence and a log barn in poor repair. That it lay 15 miles from the town of Forsyth, seven miles from Kirbyville, in a sparsely settled neighborhood, and was reached by very rough broken roads. That the land was rough and of very little value, not worth to exceed six hundred dollars.

"Plaintiffs state that Katie Kornbleet was fully aware of the fraud practiced upon these plaintiffs and was a participant therein. That she paid plaintiffs nothing for the note of $600 above mentioned.

"Plaintiffs state that upon the discovering of fraud they immediately approached defendants and demanded a rescission of the contract, offering to deed back to defendants the property so above received of them, and demanding that defendants make them whole in the premises. But defendants wholly refused to do this or to make any settlement with plaintiffs. Whereupon plaintiffs brought suit in the circuit

court of Buchanan county, Mo., in December, 1895, for a rescission of the contract and equitable relief. That afterwards, in December, 1896, plaintiffs took voluntary nonsuit in the Buchanan Circuit Court and instituted their action in this court.

"Plaintiffs state that defendants are insolvent, so that an action in damages at law would be of no avail. That the land in Taney county so above set out is the only resource these plaintiffs have against defendants. That since the institution of this action the above deed of trust has been foreclosed and defendant, Katie Kornbleet, has bought said land in at the sum and price of $120. That unless these plaintiffs can obtain equitable relief they are wholly without remedy.

"Plaintiffs state that they stand ready and have ever stood ready to reconvey to defendant, Solomon Kornbleet, the land so received from him, the same being all the property, land, goods and other things of value received of the defendants, and herewith tender into court good and sufficient deeds from plaintiffs to defendants, for said land.

"Plaintiffs therefore pray the court to grant them a rescission of this contract and give them a judgment for the sum of $2,400 against defendants. Plaintiffs ask the court to cancel the deed of trust and note above set out.

"Plaintiffs ask the court to convert the Taney county property into a trust for the benefit of these plaintiffs and charge same with the lien of their debt and damage occasioned these plaintiffs by the fraud of defendant.

"Plaintiffs pray that the court sitting as a court of equity will adjust the equities between plaintiffs and defendants and declare the property above subservient to the purpose thereof, and for such other and proper relief as this court deem proper in the premises."

### DEMURRER.

"Now at this day comes the defendants in the above cause for the purpose of this motion only, and demurs to the plaintiff's third amended petition for the following reasons to-wit:

"1st. Because said petition does not state facts sufficient to constitute a cause of action against defendants.

"2d. Plaintiffs' petition is in the nature of a bill in equity to rescind a contract for the transfer and sale of real estate on account of false and fraudulent representation, but fails to ask for a rescission of the whole of the contract.

"3d. Plaintiffs' petition does not show that they have tendered back to these defendants all they received of them, and demanded a rescission of the entire contract.

"4th. Plaintiffs' petition shows on its face that they have transferred the land conveyed by defendants to them to a third party, thereby placing themselves beyond the jurisdiction of a court of equity.

"5th. The petition on its face fails to set out facts upon which the court could make an equitable finding.

"6th. Because plaintiffs' petition taken as a whole only states an imaginary action at law of which this court would have no jurisdiction. Wherefore defendants pray the court to be discharged from further pleading in said cause and that the same be dismissed at the cost of the plaintiffs."

### I.

The fourth ground of the demurrer is a clear misapprehension. True, the petition alleges a conveyance of the land by Louis and Anna Clinkenbeard to their daughter Luella, but Luella is a party plaintiff and the plaintiffs (which includes Luella) tender a deed to the defendants for the land. This would revest the whole title, as far as the plaintiffs hold

it, in the defendants, and this is a restitution of all the plaintiffs received.

## II.

The petition states a good cause of action, and the trial court erred in sustaining the demurrer.

In Dunn v. White, 63 Mo. l. c. 184, WAGNER, J., laid down the rule, in cases like this, to be: "Where the parties are mutually mistaken in reference to some material question respecting the land, or where the vendee, in making the purchase, reposes especial confidence in the vendor and relies on his false representations, a court of equity on proper application, will rescind the sale."

In that case the learned judge reviewed the prior decisions in this State, down to 1876, stated the principles they decide, and drew from them the tests to be applied in such cases, so clearly that we adopt his language literally. He said:

"In Buford v. Caldwell (3 Mo. 477) it was declared that neither law nor equity would afford relief where the subject-matter of dispute, which was the sale of land, was equally known to both parties, or about which both had equal means of information, and in regard to which they were equally negligent.

"In the case of Glasscock v. Minor (11 Mo. 655) the distinction between the classes of fraud which would entitle a party to equitable relief, and which would not be regarded as fraud in law, in the sale of land, was clearly taken, and it was decided that a mistake in the representation of facts as to the quality of, or title to land, by which a third party was induced to purchase was a fraud in equity, however innocently the mistake occurred, but that a mistaken opinion, where the means of information were equally accessible to both vendor and purchaser, was no fraud.

"So in Owens v. Rector (44 Mo. 390) it was held, that if a purchaser would hold on to the property purchased, and look to his vendor for damages for deceit, there being no warranty, he must if sued for the purchase money, in order to successfully defend the action, satisfy the jury that the deception was intentional.

"In Morse v. Rathbun (49 Mo. 91) the alleged false representation was that certain unimproved portions of the farm were well timbered and that the soil was good, when in fact most of the timber had been cut off, and the land was broken and rocky. The plaintiff claimed that the defendant examined the premises and trusted to his own knowledge thus acquired, and it was determined that where a false representation is made of the object of sale, the party purchasing must trust to the representations and be deceived by it. It is not sufficient that it be false, but it is essential that the purchaser be deceived by the representation—that he trust to it and buy on the strength of it. If he inspect what he purchases and the defect is as open to observation to him as it is to the other party, he can not be deceived.

"In Langdon v. Green (49 Mo. 363) it was said, that fraudulent misrepresentations and concealments by the vendor of land as to its quality, situations, etc., in order to entitle the vendee to relief, must be in reference to some material thing unknown to the vendee either from want of examination or from want of opportunity to be informed.

"And if the buyer trusts to representations which are not calculated to impose upon a man of ordinary prudence, or if he neglects the means of information easily in his reach, he must suffer the consequences of his own folly and credulity. The vendee must go further and show that some deceit was practiced for the purpose of putting him off his guard, or that special confidence was reposed in the representations of the vendor, and that the contract was made and

entered into upon the strength of that confidence; and in such cases it will require clear proof of the fraudulent misrepresentations.

"The uniform doctrine, however, is, that the principle above announced does not apply, where the land which is the subject of the purchase is at a distance, and the purchaser relies wholly upon its description as given by the vendor."

And this has been the rule in this State ever since. In Caldwell v. Henry, 76 Mo. 254, it was followed, and this court further held that: "The fact that the vendee omits to examine the property or to make inquiries of persons to whom he is referred by the vendor before buying, will not relieve the latter of liability for false representations made by him concerning it in the course of the negotiation." [Hamlin v. Abell, 120 Mo. l. c. 200-201; Herman v. Hall, 140 Mo. l. c. 276.] In the case last cited GANTT, P. J., said: "It is assumed that the court found defendant was guilty of a fraudulent representation upon a *a mere expression of an honest opinion* by defendant that he had a good title when in fact he had none. Of course, no one questions that a mere expression of an opinion that one's title is good will not amount to a fraud, even if it should turn out worthless, but it is equally well settled that a statement of a material fact, for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist and that he speaks from his own knowledge. If the fact does not exist, and the party states of his knowledge that it does and induces another to act upon his statement to his injury, the law will impute to him a fraudulent purpose."

The rule established in our State is consonant with precedent and good morals. Thus, in 1 Story's Eq. Jur. (12 Ed.), sec. 191, it is said: "One of the largest classes of cases, in which courts of equity are accustomed to grant relief, is where there has been a misrepresentation or *suggestio falsi*. It is said, indeed, to be a very old head of

equity, that if a representation is made to another person going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good, if he knows it to be false. To justify, however, an interposition in such cases, it is not only necessary to establish the fact of misrepresentation, but that it is in a matter of substance, or important to the interests of the other party, and that it actually does mislead him." Again, in section 192, the same author says: "Where the party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is a positive fraud in the truest sense of the term. There is an evil act with an evil intent." And in section 195, the same author says: "In the first place, the misrepresentation must be of something material, constituting an inducement or motive to the act or omission of the other party, and by which he is actually misled to his injury. Thus, if a person owning an estate, should sell it to another, representing that it contained a valuable mine, which constituted an inducement to the other side to purchase, and the representation was utterly false, the contract for the sale, and the sale itself, if completed, might be avoided for fraud; for the representation would go to the essence of the contract." The same author states the rule as to the difference between a representation and a mere expression of opinion, in section 197, and in sections 199 and 200 the rights of the parties where their knowledge or means of knowledge are the same and where the parties are not similarly situated or where one reposes special confidence in the other, are clearly pointed out.

In Caldwell v. Henry, 76 Mo. l. c. 259, the land was within one day's journey from the place where the contract was entered into and the representation made, and it was held that the parties did not stand on an equal footing and

that the sale would be avoided notwithstanding the plaintiff did not examine for himself. The case stated in this petition is much stronger. Here the contract was made in St. Joseph, and the land was in Taney county. In other respects the Caldwell case and this case are very similar, except that this is a suit in equity while that was an action at law for damages, but the difference is only one of remedy, and not of principle.

The petition charges facts sufficient to constitute fraud such as avoids the contract, and entitles the plaintiff to the relief sought, if the facts are found to be true; and the demurrer admits their truth. As between the parties to the action the plaintiffs are entitled to the relief asked, if their averments are true, and the circuit court erred in sustaining the demurrer to the petition. For this error the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith. All concur.