ROBERT E. BLANKE and IRMA J. BLANKE, (Plaintiffs) Respondents, v. SOPHIA C. MILLER and FRANK E. MILLER, Her Husband; and FRED C. SCHUEPFER INVESTMENT & REALTY COMPANY, a Corporation, (Defendants) Appellants, No. 43567—268 S. W. (2d) 809.

Division Two, April 12, 1954.

Motion of Appellant, Fred C. Schuepfer Investment & Realty Company, for Rehearing, to Modify Opinion or to Transfer to Banc Overruled, June 14, 1954.

798

*Oliver F. Erbs* and *Donald E. Lasater* for appellant Fred C. Schuepfer Inv. & Realty Company.

*Allen H. Whittington* for appellants Sophia C. Miller and Frank E. Miller.

*Henry Ebenhoh* and *Walter S. Berkman* for respondents.

BARRETT, C.—This is an action to rescind a real estate transaction, the sale and purchase of four lots, to cancel notes and a deed of trust executed in part payment of the purchase price, and to recover the partial payments actually made upon the stipulated purchase price. The action in rescission is by the purchasers, Robert and Irma Blanke, against the vendors, Sophia C. and Frank E.

Miller, and a real estate broker, the Fred C. Schuepfer Investment & Realty Company. The trial court found, as the plaintiffs claimed, that the broker, as agent for the vendors, misrepresented the location of the lots, that the plaintiffs purchased the lots in reliance upon the misrepresentation and, accordingly, the court decreed that the Blankes reconvey the lots to the Millers, cancelled the notes and deed of trust, and entered a judgment against both the vendors and their broker for the payments made on the purchase price, $2,890.85, together with interest in the sum of $115.60. Upon the Millers' cross-claim against the broker, the court entered judgment in their favor in the sum of $500 for commissions paid and attorney's fees. The defendant vendors and the broker have perfected separate appeals from the judgment and decree, the broker claiming that the court erred in rescinding the transaction and in entering judgment against it in favor of their principals, the vendors claiming that the broker was the agent of both parties and that there was no evidence to support a judgment against them. The vendors also assert that the $500 award to them is grossly inadequate and that they are entitled to a decree against the broker indemnifying them for the full amount of their loss occasioned by the broker's wrongdoing.

Mr. and Mrs. Miller owned lots 4, 5, 8, 9, 10 and 11 Boulevard Frontage in St. Louis County. On February 23rd, 1948, they entered into a written listing contract ▪▪▪ with the Fred C. Schuepfer Investment & Realty Company, authorizing the sale of the lots for the price of $2000 for each lot. Thereafter Schuepfer's employees, Mrs. Beckmann and Mr. Hogenmiller, accompanied by Mrs. Miller, who had then furnished the company with a plat of the lots, inspected the lots and placed "for sale" signs upon lots 8, 9, 10 and 11. According to them, there were no signs north of Florence Street in the addition. Lot 12, owned by some other person, was north of Florence Street and Schuepfer had that lot for sale, but they did not place any signs on that lot. In July 1948 Robert Blanke, a truck driver for the Overland Iron & Metal Company, saw the Schuepfer "for sale" signs on lots facing on Lindbergh. He was interested in a level plot of ground on a highway for the purpose of developing a service station and a truck-stop restaurant, and, upon seeing the signs, called the company office and talked to Mrs. Beckmann. Mrs. Beckmann denies it, but Robert said that she called in a few days and they met at the property and she pointed out its location to him, and told him that "it consisted of four lots, three lots forty feet, one lot 35 feet, that was supposed to be a corner lot." He says that they walked over the ground where the "for sale" signs were and they saw the stakes "except the stakes for the north corner" which they were unable to locate. He identified a photograph, his exhibit one, as a picture of the lots Mrs. Beckmann pointed out to him. (During the greater part of the trial the parties tried this case, and particularly the identity

of the lots represented and sold, with reference to two photographs. The Blankes' exhibit one which they claim is a photograph of the lots shown by the agents as the Millers' lots and which they claim they thought they were purchasing, and defendants' exhibit six which is a photograph of the lots actually owned by the Millers, upon which the agents say they placed their signs, and were in fact the lots shown and sold to the Blankes.) Robert said, "I think the property was a little hazy in Mrs. Beckmann's mind," and in a few days Mrs. Beckmann came by the Blanke's home with her associate, Mr. Hogenmiller, and they again visited the lots.

On this occasion, according to both Robert and Irma, Mr. Hogenmiller definitely pointed out the lots where the "for sale" signs were located, north of what was to become Florence Street, as the four lots owned by the Millers. It was then that he was informed that the price of the four lots was $8000. In a few days, August 4th, 1948, they came by his home again and he informed them that the price was too high and they suggested that he propose a price and they would submit it to the owners. He offered to pay $7000 for the four lots and accordingly they drew up and he and his wife signed a contract to purchase and made a down payment of $350. They later returned the contract signed by Mr. and Mrs. Miller and on September 20th the transaction was "closed," the Blankes made an additional payment of $861.45, and executed installment notes totalling $5900, secured by a deed of trust on the land to the Millers. Thereafter Robert and Irma made twenty-seven payments of $62.20. Robert claims that he did not discover that he had been sold the wrong lots until December 1950, before receiving a deed to the lots. He was driving along Lindbergh one day and saw a man constructing a road across what he thought was one of his lots and, upon challenging the man, learned for the first time that his lots were not the ones represented by Mrs. Beckmann and Mr. Hogenmiller. He immediately called the Schuepfer office and was advised that Mrs. Beckmann and Mr. Hogenmiller were no longer employed by the company and that he should get an admission from Mrs. Beckmann that she had made a mistake.

Proceeding with this advice, he caused his friend, Whiteman, who did not testify, to pose as a prospective purchaser, and called Mrs. Beckmann and told her that he had a purchaser and asked her to handle the sale for him. Mrs. Beckmann asked Mrs. Miller to accompany her and they met the Blankes and Whiteman at the lots. And again, he said, she "proceeded to show him the same property she showed me. * * * The property on that picture, and I talked to Mrs. Miller and Mrs. Miller said Mrs. Beckmann is showing that man the wrong property, my property is down here." Mrs. Beckmann, nevertheless, insisted that Mrs. Miller was wrong and did not know the location of her property. Mrs. Miller says that Mrs. Beckmann

asked her to go along "so she wouldn't make any mistake in knowing where the property was, because it had been 27 months since she had been out there * * * and if she didn't remember I went along to show her." Her version of the crux of this episode was that, for the first time, she met the Blankes and "they introduced Mrs. Beckmann to Mr. Whiteman as a prospective buyer and she was talking to Mr. Whiteman and I was talking to Mr. and Mrs. Blanke, and I said 'here is where the lots are, and they go south from there.' At that time he said 'I didn't think I bought these lots, I bought this way.' I said 'you couldn't had, there was that road there.' " Mrs. Beckmann's version was that she did not point out the lots on this occasion. She said, "I asked Mrs. Miller to go with me, because this was my third trip out there, and I wasn't any too sure, couldn't remember just where they were located, they were her lots, and I asked her to ride out with me and she was glad to do it. * * * I guess I couldn't have found them. Mrs. Miller pointed out every one of them and the particulars as to them, how deep they were. We walked all over the lots and she pointed it out to them" and they were the lots pictured in defendants' exhibit six.

After this episode the plaintiffs employed counsel, gave notice of intention to rescind, tendered a deed to the lots, and demanded the return of their notes and the payments made, and, upon the defendants' refusal, instituted this action. The appeal in this suit in equity is triable anew upon its merits, this court determining the weight and value of the evidence and enforcing the appropriate equitable principles. Been v. Jolly, (Mo.) 247 S. W. (2) 840, 853; Binnion v. Clark, 359 Mo. 202, 206, 221 S. W. (2) 214, 216. However, the determination and resolution of the questions presented upon this appeal are peculiarly dependent upon conviction as to the credibility of the witnesses, and the analysis, interpretation and acceptance of absolutely conflicting oral testimony, compelling, in the circumstances, deference to the finding of the trial court. V.A.M.S., Sec. 510.310(4); Strafer v. Bodney, (Mo.) 247 S. W. (2) 630, 634; Meyer v. Schaub, 364 Mo. 711, 266 S. W. (2) 620. By reason of the compelled deference as to credibility and the dependence upon the sifting of conflicting oral testimony it is not possible upon this record and trial anew to say that the judgment and decree are "clearly erroneous." V.A.M.S., Sec. 510.310 (4). It is only possible to demonstrate by illustration and corroborative circumstance that the questions presented must be resolved as the trial court found and resolved them.

For example, directly contrary to the testimony of Robert and his wife, Mrs. Beckmann denies that she ever pointed out the lots to Robert. She denies that she was there alone with Robert the first time as he claims, she says that Mr. Hogenmiller pointed out the lots on the first trip she did make, and that Mrs. Miller pointed out the lots on the last trip. She knew that Robert wanted the ground for

a filling station and a drive-in restaurant, but she denies that he particularly wanted ground level with the highway or that grading or excavation were factors in his purchase of the particular lots. The testimony of the interested witnesses is in direct conflict as to the lots pointed out, as indicated by their respective photographs, and as it was as to the location of the "for sale" signs. Mrs. Blanke testified that Mrs. Beckmann came by the house, on January 21st, 1951, at a time when Robert was not at home, and in the course of the conversation said, "I have made a mistake; the only thing I can do to get out of the mess is for me to try and sell it." Mrs. Beckmann denied making the call as well as the conversation. Robert says that he was not shown a survey of the lots, and when he mentioned the necessity of one was informed by Mrs. Beckmann that it was not necessary. On the other hand, Mr. Hogenmiller says that he had Mrs. Miller's survey with him when he pointed out the lots to Robert, and Mrs. Beckmann says that Mr. Hogenmiller showed the Blankes the plat as well as the lots.

 As indicated by the illustrations, the crucial, decesive testimony is oral and directly in conflict and if the facts are as the trial court found them, that the real estate company's agents, assuming to act as of their own personal knowledge, misrepresented the location of the lots to the Blankes, as well as other facts affecting the desirability of the lots from the vendees' viewpoint, and the misrepresentations were relied upon, the vendees are entitled to have the transaction rescinded and recover the amounts paid upon the purchase price. Annotation 38 L.R.A. (N.S.) 301, 303; 55 Am. Jur., Secs. 76, 77, 78, pp. 550-552; Judd v. Walker, 215 Mo. 312; 114 S. W. 979; McGhee v. Bell, 170 Mo. 121, 70 S. W. 493; Clinkenbeard v. Weatherman, 157 Mo. 105, 57 S. W. 757; Hickey v. Drake, 47 Mo. 369; Snyder v. Stemmons, 151 Mo. App. 156, 131 S. W. 724. In the circumstances, as they must be found, there can be no question as to the real estate company's liability (Fleming v. Anderson, (Mo.) 232 S. W. 718), and the vendor-owners' liability rests upon the most fundamental principle of agency that the vendor is liable for the misconduct of his duly appointed agent in effecting a sale, although the misconduct was without the vendor's knowledge or consent. 55 Am. Jur., Sec. 85, p. 559; Wolfersberger v. Miller, 327 Mo. 1150, 1160, 39 S. W. (2) 758, 764; Judd v. Walker, supra. There was no written contract by which the Blankes appointed the real estate company their agent to buy or sell the lots (V.A.M.S., Sec. 432.010), as there was by the Millers, and, while the company's employees may have been the Blankes' agent in transmitting the counteroffer of $7000 (there was no contract until the original offerers' acceptance of the counteroffer (55 Am. Jur., Sec. 15, p. 482; annotation 135 A.L.R. 821)) the company was not in fact the agent of both parties. T. J. Moss Tie Co. v. Stamp, (Mo. App.) 25 S. W. (2) 138; Fuchs

v. Leahy, 321 Mo. 47, 9 S. W. (2) 897. In this connection it must be noted that while the actions for damages for fraud and deceit (Orlann v. Laederich, 338 Mo. 783, 92 S. W. (2) 190) are helpful in so far as they concern certain general principles, they are not precisely in point in the rescission cases which, from the vendor's viewpoint, present entirely different problems involving certain equitable considerations. Annotation 57 A.L.R. 111, 112.

As between the plaintiffs and the defendants, the trial court appropriately entered judgment against all the defendants, (Judd v. Walker, 215 Mo., l.c. 336, 114 S. W., l.c. 980; Waugh v. Williams, 342 Mo. 903, 912, 119 S. W. (2) 223, 227), there was no request by the Millers for a postponement of any part of the action or any suggestion that any claim they may have had against the realty company could not be adjusted in this action, and they have been awarded the exact amount of loss directly shown by their evidence, $500, any other losses may not occur and were not directly shown by the evidence. Upon this record and the questions presented by the appeal, neither appellant has any cause for complaint, as between themselves, as to any issues actually tried, shown by the evidence or decided. Accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.