Aleene NAGELS, Respondent,

v.

R. B. CHRISTY, doing business as Sunny Slope Farm, Appellant.

No. 47233.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1959.

Motion for Rehearing or to Transfer to Court en banc, or to Modify Opinion and Judgment Denied Jan. 11, 1960.

David H. Clark, Kansas City, James W. Wallace, Scott City, Kan., for appellant.

Sebree, Shook, Hardy & Ottman, Kansas City, of counsel.

Howard W. Bevins, Kansas City, Hal C. Davis, Topeka, Kan., for respondent.

BOHLING, Commissioner.

Mrs. Aleene Nagels sued R. B. Christy for false and fraudulent representations in the sale of Northern Breeze, a five-gaited show mare. The jury returned a verdict for plaintiff of $5,500 actual and $10,000 punitive damages. Plaintiff complied with the trial court's requirement of a remittitur of $1,500 from the actual damages, and judgment was entered in favor of plaintiff for $14,000. Defendant has appealed and contends that the person who sold the mare to plaintiff was not the agent, servant or employee of defendant; and that plaintiff's main instruction was erroneous.

■ In determining whether plaintiff made a submissible case of fraud we take plaintiff's evidence as true, disregard defendant's evidence in conflict therewith, and give plaintiff the benefit of all favorable inferences from all the evidence. Lindsay v. Sonora Gold Min. & Mill. Co., Mo., 196 S.W. 764(I); Kelley v. Absher, Mo.App., 210 S.W.2d 531 [1].

Plaintiff and her husband, Earl C. Nagels, live in Topeka, Kansas. She has engaged in showing horses for fifteen years. Tom Davis trained plaintiff's horses.

R. B. Christy, defendant, owns the Sunny Slope Farm near Scott City, Kansas, where saddle horses are bred, trained, shown and dealt in. He estimated his net worth at $1,150,000. Miss Irene Zane, who had been in defendant's employ for twenty years, is defendant's manager and secretary in charge of the farm, and had authority to advertise and sell defendant's horses. J. B. Utz was defendant's head trainer.

Sug Utz, J. B.'s brother, owns the Blue Ridge Stables near Raytown, Missouri, where he trains and deals in show horses.

He testified that people sent him horses to sell; that on some transactions he received all over a stated amount the owner wanted for the horse, and on other transactions he received a commission on the sale price.

Northern Breeze was foaled June 1, 1951, and was purchased by defendant and delivered to Sunny Slope Farm in February, 1954. She was considered a top show prospect and was trained as a five-gaited show horse. She is a half sister to Southern Breeze, winner of a three-gaited championship.

Witness B. F. Vsetecka worked as a groom at defendant's Sunny Slope Farm. He testified that about August, 1954, Northern Breeze was continually in heat and would become unruly after making several rounds around the track; that they would feed the mare as much as two tubes (about 1 to 1½ inches in diameter and 4 to 5 inches long) of saltpeter a week; that Miss Zane also had them place a copper boiler in the mare's manger for her to eat from and nail copper pennies in her grain box to help control the heat cycles. If the mare was quiet she would not get the two tubes of saltpeter. This feeding of Northern Breeze continued until she left Sunny Slope Farm.

Defendant, Miss Zane and J. B. Utz decided that Northern Breeze and several other horses were ready for sale, and Miss Zane prepared an advertisement of their sale for the April, 1956, issue of "Short Snorts," a magazine circulating among people interested in horses. This advertisement, so far as material, stated that Northern Breeze was a "five year old five-gaited show mare * * * out of Mary E. Books who is also the dam of Southern Breeze"; that Northern Breeze was "completely trained," "ready to show," of "very fine disposition," "can rack and trot with great speed and action," and "is always in form and no mistakes."

The first week in April, 1956, Miss Zane purchased three horses from Sug Utz for defendant. Sug mentioned that he had a

prospective buyer for a lady's or amateur's mare. Miss Zane told him about Northern Breeze; and that Northern Breeze was a lady's and amateur's horse, ready for showing and in sound condition. Miss Zane talked to defendant, and thereafter informed Sug Utz they would send Northern Breeze to him; he should keep and show her to prospective customers, and they would have to have $1,500 net to them. The purpose was for Sug to offer the mare for sale. The horses purchased from Sug Utz were delivered to Sunny Slope April 6, 1956, and the truck took Northern Breeze to Sug's stables on its return trip. Sug's customer wanted a lady's and amateur's mare for his thirteen year old daughter and, after looking at Northern Breeze, did not purchase the mare.

Plaintiff was interested in a five-gaited horse, and, reading the advertisement of Northern Breeze, was interested in the mare. Tom Davis met Sug Utz and Sug told him to come over and look at the five-gaited mare he had. Plaintiff and Davis went to see the mare the latter part of April. On this trip plaintiff rode Northern Breeze and liked her but in a short time, when plaintiff started to canter the mare, she acted very nervous. Plaintiff questioned Sug about the mare and asked whether she was a "hot mare," one that became nervous, unmanageable, and lunged. He said she was not a hot mare, and directed their attention to the mare's front fetlocks, which were quite raw and sore, indicating this might have caused her actions. These sores are comparable to blisters on a person's heel. Sug agreed to treat the fetlock condition and plaintiff was to return in a couple of days.

Plaintiff returned to Sug's a second time and again rode Northern Breeze, experiencing the same difficulty as on the first occasion. The fetlock condition was still present. Plaintiff was undecided about Northern Breeze but wanted a five-gaited horse to show at Oklahoma City and Tulsa, and Sug told her to enter the mare and if there was anything wrong with the mare

that he did not know about, he would make it all right. Sug asked plaintiff $3,500 for Northern Breeze.

On each trip Sug Utz represented Northern Breeze to be a lady's and amateur's horse, sound, and ready for showing. A lady's and amateur's horse is one that a lady can ride and show without fear of being hurt.

Plaintiff discussed the mare with her trainer, Mr. Davis. She made a third trip to Sug Utz's on April 25, 1956. Having seen the advertisement in Short Snorts, and knowing Mr. Christy and Mr. Utz, and that Mr. Christy had owned Southern Breeze, and relying upon the representations of Sug Utz regarding Northern Breeze, plaintiff made an offer of $1,250 and her horses Glorious Melody and Mr. Peepers for Northern Breeze. Sug excused himself, made a telephone call, and, when he returned, informed plaintiff he had sold Glorious Melody and would accept her offer. Plaintiff paid Sug Utz the $1,250, and he later remitted $1,250 to defendant. The horses were exchanged about two days after the sale. Plaintiff forwarded Glorious Melody and Mr. Peepers to Sug Utz, with their registration papers, and Northern Breeze was delivered to plaintiff. Sug sold Glorious Melody as she came off the truck for $250, and Mr. Peepers about three months later for $600, which amounts were retained by him.

On account of the unmanageable behavior of Northern Breeze at the Oklahoma City horse show, the mare was returned to Topeka and examined by Dr. John S. Haley, a veterinarian, on May 31, 1956. He testified Northern Breeze was diseased with cystic ovaries; that she had suffered from nymphomania for a year or more; and that a common symptom of this disease is for the mare to become unmanageable after being warmed up.

There was testimony that Northern Breeze was worthless in her diseased condition.

The rules of the American Saddle Horse Breeders' Association require the registration papers of horses therein registered to be endorsed by the owner to the purchaser. Miss Zane, upon inquiry of Sug's wife, was informed to whom Sug had sold Northern Breeze and under date of May 16, 1956, R. B. Christy, defendant, endorsed the official registration certificate for Northern Breeze directly to Mrs. E. C. Nagels, plaintiff.

Plaintiff timely informed Miss Zane and, after repeated efforts, defendant of the condition of Northern Breeze, offering to lose her two horses involved in the trade if her $1,250 be returned. Plaintiff's offer was rejected.

Defendant contends Sug Utz was not the agent or servant of defendant, but a dealer in horses, and plaintiff failed to make a case. Defendant stresses cases like Horn v. Rhoads, 317 Mo. 572, 296 S.W. 389, 391 [2]; Sweat v. Brozman, 239 Mo.App. 1048, 198 S.W.2d 531, 536, and Krone v. Snapout Forms Co., 360 Mo. 821, 230 S.W. 2d 865. Plaintiff stresses cases like Borah v. Zoellner Motor Car Co., Mo.App., 257 S.W. 145 [3, 4]; Leidy v. Taliaferro, Mo., 260 S.W.2d 504 [5, 6]; Fitzgerald v. Cardwell, 207 Mo.App. 514, 226 S.W. 971. The Horn, Sweat, Borah and Fitzgerald cases involved actions against the owner of an automobile for damages occasioned a plaintiff by the negligent acts of one driving the automobile with the owner's consent and turned on the issue whether the driver was on a mission for the owner and the owner controlled or had the right of control over the driver. The Leidy case differed factually but the driver was subject to the control of and on a mission for the defendant. These cases may bear on the issue here but we think they are not necessarily controlling.

The Krone case, supra, was an action for libel by a principal against an agent. The court there defined the term "dealer," stating (230 S.W.2d 868 [1]): "A dealer is not one who 'buys to keep or makes to sell, but one who buys to sell again'; a dealer buys to sell as a business for gain or profit; he is a middle-man who buys from the producer and sells to the consumer or user of a commodity. A dealer is both a buyer and a seller and need not have a place to keep for sale that in which he deals."

Sug Utz never bought Northern Breeze. He had possession of the mare for the purpose of offering her for sale but never held title to the animal. See 2 Mechem, Agency, 2d Ed., § 2499.

A master is a species of principal and a servant is a species of agent whose physical conduct is controlled or is subject to the right of control by the master. The physical activities of agents of a higher grade, such as brokers and factors, are usually not subject to the right of control by their principal, and such special agents, with respect to their physical activities in the conduct of their business, are generally independent contractors. An important distinction between ordinary agents, including brokers, and factors is that the former need not have possession of the property of their principal while a factor, a bailee, has actual or constructive possession of his principal's property. 35 C.J.S. Factors §§ 1, 40, pp. 390, 432; 22 Am.Jur. 307, §§ 2, 3, 6, 12; 12 C.J.S. Brokers §§ 1, 4, pp. 5, 9; 8 Am. Jur. 989, §§ 2, 4, 5; Annotation, 19 A.L.R. 268(c); Restatement, 2d, Agency, § 250.

■ While not usually liable for physical activities of a broker or factor resulting in damage to third persons, a principal is liable for material misrepresentations of his property by his broker or factor, acting within the scope of the authority conferred, inducing a third person to enter into transactions therefor. 35 C.J.S. Factors § 63, p. 470; 22 Am.Jur. 333, § 47; 12 C.J.S. Brokers § 129, p. 327; 2 Am.Jur., Agency, 269, §§ 346, 351, 362, 393; Restatement, 2d, Agency, §§ 251 comment b, c, 257; 2 Mechem, Agency, 2d Ed., § 2579; Story, Agency, 9th Ed., § 266; Higgins v. McCrea, 116 U.S. 671, 680, 6 S.Ct. 557, 29 L. Ed. 764; Blanke v. Miller, 364 Mo. 797,

268 S.W.2d 809 [3–6]; Wolfersberger v. Miller, 327 Mo. 1150, 39 S.W.2d 758 [7, 9]; Adams v. Barber, 157 Mo.App. 370, 139 S.W. 489 [7, 9].

■ The facts establish the relationship of principal and factor between defendant and Sug Utz for the offering of Northern Breeze for sale, making defendant liable for his factor's misrepresentations. Miss Zane, defendant's general manager, made the representations to Sug Utz about Northern Breeze that he repeated to plaintiff. There was testimony that these statements were material misrepresentations; that plaintiff believed said statements, and was deceived and induced to purchase said mare in reliance upon their truthfulness. Defendant received from his factor his authorized price for the sale of the mare, which plaintiff paid and which he retains under the erroneous belief that Sug Utz acted as a dealer.

■ For his second and last point defendant contends plaintiff's verdict directing instruction was erroneous "for the reason that said instruction failed to hypothesize facts for the jury to determine whether or not Sug Utz was an agent, servant, or employee of defendant which is the only theory upon which plaintiff could possibly recover." Defendant quotes and attacks the following from the instruction: "The court instructs the jury that if you find * * * the defendant through his agents, servants and employees, acting within the scope of their employment authority, represented to plaintiff * * *, and if you further find that said representations, if any, were false and the defendant, his agents, servants, and employees at the time of making said representations, if any, knew that said representations, if any, were false * * *."

Defendant stresses Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319, 327 [8], where, under conflicting testimony and complicated facts, plaintiff's failure in an action for a real estate broker's commission to hypothesize facts respecting a subagency, which was the procuring cause, was considered to give the jury a roving commission and erroneous. The record before us brings the instant case within the observation made in the Martin case that under a different set of facts the instruction might have been sufficient. Here Irene Zane, acting for defendant as his general manager, and Sug Utz, for himself, were the parties who made the agreement for placing the mare with Utz for sale. They were defendant's witnesses. Miss Zane testified:

"Q. * * * I believe you testified that the mare was sent up to Mr. Sug Utz? A. Yes.

"Q. Of course, the purpose of sending her up to the stable was for him to sell her? A. To offer her for sale."

Sug Utz testified: "Q. Now, you were employed by Mr. Christy to sell this mare, weren't you? A. She was sent there to sell by Mr. Christy, yes, sir. * * *

"Q. * * * My question was, Mr. Utz, you were employed by Mr. Christy to sell this mare, weren't you? A. She was sent there to sell, yes.

"Q. Yes, sir. You were employed to sell her? A. To sell her when she got there."

Thus, defendant's evidence made obvious, if it did not admit, the fact that Sug Utz was defendant's agent to offer for sale and to sell Northern Breeze. Defendant did not request an instruction submitting the defense that Sug Utz was acting as a dealer and not as his agent for the sale of the mare.

Appellate courts are not to reverse a judgment for error that does not materially affect the merits of the action (Section 512.160 RSMo 1949, V.A.M.S.). Plaintiff's said instruction was loosely drafted and is subject to criticism, but under the record before us the instruction sufficiently hypothesized the necessary facts for the jurors' determination of the ultimate issue

of Sug Utz's acting as agent for defendant and the point made by defendant, which does not involve misdirection, does not establish prejudicial error. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 501 [3]; Logsdon v. Duncan, Mo., 316 S.W.2d 488, 491 [3, 4].

The foregoing disposes of all points presented for determination upon this appeal.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.