**Keith O. WILSON and Lorraine Wilson, (Plaintiffs) Respondents,**

**v.**

**William H. MURCH and Nellie C. Brown, (Defendants) Appellants.**

No. 30783.

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1962.

Woodside, McGowen & Dearing Lowell C. McGowen, and Thomas H. Pearson, Clayton, for appellants.

Armstrong, Teasdale, Roos, Kramer & Vaughan, Charles E. Dapron, John P. Emde, and Bruce E. Woodruff, St. Louis, for respondents.

ANDERSON, Presiding Judge.

In this action, Keith O. Wilson and Lorraine Wilson, sued defendants William H. Murch and Nellie C. Brown, for damages claimed as a result of alleged false representations in the sale of a house. There was a verdict for plaintiffs for $450.00 actual damages, and $1,000.00 punitive damages. From the judgment on the verdict defendants have appealed.

The essential complaint in the petition is that the defendants in negotiating a sale of a house to plaintiffs, through their agents, and in response to specific inquiries by plaintiffs, falsely stated on several occasions that the furnace in said house was sound and in operating condition; that in reliance upon said representations plaintiffs purchased said house; that said representations were false; that defendants knew that said representations were false, or knew at such time that they, defendants, did not possess sufficient information or knowledge to know whether said representations were true or false; that the falsity of said representations were not known by plaintiffs and did not become known to them until after their purchase of said house; that had plaintiffs known of the falsity of the representations

they would have refused to proceed with the closing of the sale; that said representations were made by defendants with the intent that they should be relied upon by plaintiffs and that plaintiffs would thereby be induced to purchase said real estate; that plaintiffs did rely upon said representations, and purchased said improved real estate to their damage. It was further alleged that after making said purchase plaintiffs discovered that said furnace was not sound and in working condition, but that same was totally inoperable and, in such condition, it could not be restored to operating condition without completely rebuilding said furnace; that it would cost $700.00 to put said furnace in proper working condition and that by reason of the falsity of the defendants' representations plaintiffs were damaged in the amount of $700.00. It was also alleged that by reason of said misrepresentations plaintiffs were entitled to punitive damages in the sum of $5,000.00. There was a prayer for damages in the total sum of $5,700.

The defendants' answer denied specifically the allegations of fraud contained in plaintiffs' petition.

Defendants' first assignment of error is that the trial court should have sustained their motion for a directed verdict at the close of plaintiffs' case, and a like motion filed at the close of all the evidence for the reason that no representations were made which could constitute a basis for recovery. We have for review only the action of the court in refusing the motion filed at the close of all the evidence, for the reason that defendants, by introducing evidence to support their defense after their motion at the close of plaintiffs' case was overruled, waived their right to complain of the court's action with respect to said motion. Sides v. Mannino, Mo.App., 347 S.W.2d 391; Snead v. Sentlinger, Mo., 327 S.W.2d 202. We will, therefore, detail the facts shown by the evidence which have bearing on the issue, viewing the evidence in the light most favorable to plaintiffs' case.

Plaintiffs were husband and wife. In the Spring of 1958 they became interested in a piece of property owned by the defendants and located in Kirkwood, Missouri. Defendants were brother and sister, and had inherited the property from their mother, who died in 1956. Each defendant owned an undivided one-half interest in said property. Defendant William H. Murch with his family, which consisted of a wife and son, lived in the property from June 1947 until February 4, 1958. On April 1, 1958 defendants listed the property for sale with Harry Herring Co., real estate dealers. The members of this firm were Harry C. Herring, his wife, Arlene B. Herring, and his son, Harry G. Herring. Harry G. Herring handled the listing contract with Mr. Murch. He testified that at the time the listing contract was signed Mr. Murch, in response to an inquiry about the condition of the furnace, stated that it had been in operation for the past heating season. The next day Harry G. Herring related to his father, in Mr. Murch's presence, the conversation he had had with Mr. Murch regarding the furnace. Mr. Herring, Sr., testified that on that occasion he asked Mr. Murch if the furnace was in good working condition. Mr. Murch replied that the furnace was in working condition up to the day he moved, and was still in working condition. Arlene B. Herring who was defendants' witness, testified that on one occasion when she was on the premises with Mr. and Mrs. Wilson they asked about the condition of the furnace. She then testified: "I did tell them that the furnace was in operating order because Mr. Herring told me that the owner told him that the furnace was in working condition." She further testified, "I believe I talked with Mrs. Wilson over the phone and again she asked me if the furnace was in operating condition and I said yes it was, according to the owner the furnace was in operating condition." Mrs. Herring further testified that on another occasion she met Mr. and Mrs. Wilson at the premises and Mr. Wilson "asked me if the furnace was in operat-

ing condition and I told him, yes, the owner said it was in operating condition."

Mr. Wilson testified that in April he went to the premises at which time Mr. Herring was present. He further testified: " * * * I asked him at that time about the furnace if it were in operating condition and he said yes. * * * He said that we should get further use out of it and I said we would almost have to." Mrs. Wilson testified that on one occasion she and her husband inspected the property at which time Mr. Herring was present. She testified, "We asked if the furnace was in working operation and he said, yes it was, that it worked. And we said we needed a house and we were limited to an old house but we didn't have any money for a new furnace at that time, whatever house we bought would have to have a furnace that would last at least a season or two. And he said he knew of no reason why it wouldn't work for one year or two or whenever we got ready to replace it so far as he knew. * * * Well, he said the furnace was working, the tenants had used it, the furnace was in operating condition and he felt that we could count on it for one year or two * * * before we replaced the furnace or before we had any extensive repairs done."

The furnace was not in operation at any time plaintiffs were on the premises. Plaintiffs made an offer of $13,000.00 for the property. This offer was accepted by defendants and a purchase agreement was entered into on May 21, 1958. The transfer of the property to plaintiffs was made June 30, 1958 and plaintiff moved in the same day. In July 1958, Mrs. Wilson called Doll Heating Company of Kirkwood to service the furnace. Two men were sent to the premises for that purpose by the Doll Company. After examining the furnace one of these men said to Mrs. Wilson, "Lady, you don't have a furnace", and stated that the radiator on the inside had fallen and that there was no point in continuing the work. Mrs. Wilson then called Mr. Herring and told him what had happened. Mr.

Herring suggested that she get at least two other opinions from furnace men before she did anything further, and that, in the meantime, he would talk to the previous owners. Plaintiffs thereafter secured estimates for the replacement of the furnace. C & R Heating & Service Co. of Overland, Missouri, submitted a proposal for replacing the furnace for $605.00 and for repairing the stoker $90.00, total $695.00. Kirkwood Sheet Metal Works, Inc. of Kirkwood submitted a proposal for replacing the furnace and repairing the stoker for a total sum of $715.00. Doll Heating Company's estimate was $700.00.

Richard Lanham, an employee of the Doll Heating Company, examined the furnace. When he arrived at the property, the smoke pipe had been removed and there was revealed the fact that the bottom part of the radiator, which was over the combustion chamber, was missing. It was found on the floor inside the casing of the furnace when the casing was removed. In that condition the furnace was not in a condition to be operated safely, because the break would permit smoke and fumes from the combustion chamber to enter the house from the furnace. The radiator was in such a condition that it would not be practical to repair it for the reason that, no parts necessary for repair were available on account of the age of the furnace. Lanham testified that the break in the radiator did not appear to be a new one, but had been there for some time. It was a break of long standing and the condition would have been noticed by anyone living in the house because of the smoke and fumes. The condition could not have been seen from the furnace door, and no one just looking at the furnace could discover the condition of the radiator. The Doll Company removed the furnace and replaced it with a new one at the cost of $750.00.

It is urged by defendants in support of their motion to dismiss that an essential element of a cause of action for fraud is missing, namely, knowledge on the part of defendants that the furnace was

not in a sound and operating condition at the time the representations were made. In their argument in support of this contention defendants rely upon their own evidence which tends to show such lack of knowledge. This is the wrong approach to the problem. In passing on the matter we must assume as true every fact and circumstance in plaintiffs' favor as shown by the evidence, and give plaintiffs the benefit of all favorable inferences which may reasonably be drawn from such facts. All evidence and inferences unfavorable to plaintiffs must be disregarded. Parker v. Green, Mo.App., 340 S.W.2d 435; Shepherd v. Woodson, Mo., 328 S.W.2d 1. We think there was sufficient evidence from which the jury could reasonably find that defendants knew that the furnace was not sound and in operating condition at the time the representations were made. The jury could find from the testimony of Richard Lanham that the furnace was not in working condition at the time he inspected it, and that the break in the radiator had existed quite some time prior to the sale of the premises. Mr. Lanham further testified that the furnace in the condition he found it could not be fired without filling the house with smoke and fumes which would be apparent. Defendant Murch testified that he used the furnace during the previous heating season. From all this evidence a reasonable inference could be drawn that the furnace was not in operating condition and that defendant Murch knew this. As to defendant Brown, liability may be predicated on the ground of principal and agent. The record shows that defendant Murch in selling this property acted as agent for his sister, Mrs. Brown. The law is well established that, where an agent, acting within his actual or apparent authority, procures the execution of a contract for the sale of property by means of fraud, the principal is liable for the damage incurred thereby, even though the principal is innocent of personal participation in the fraud, when he accepts and retains benefits which accrue from the transaction. In the case at bar it appears that defendant Brown did profit from the sale of the property. See Judd v. Walker, 215 Mo. 312, 114 S.W. 979; Wolfersberger v. Miller, 327 Mo. 1150, 39 S.W.2d 758; 2 Pomeroy's Equity Jurisprudence, Sec. 909, p. 399; 2 Mechem on Agency, Secs. 1776 and 1984; Blanke v. Miller, 364 Mo. 797, 268 S.W.2d 809.

█ It is also urged that there could be no liability in this case because the agents through whom the representations were made were not themselves guilty of fraud. There is no merit to this contention. A recovery can be had for false representations made to another with the intent that they be communicated to a third person for the purpose of defrauding said third person. Watson v. Crandall, 7 Mo.App. 233, affirmed 78 Mo. 583. The fact that the person used as an agent to convey the representation is innocent does not relieve the party charged with the fraud. To hold otherwise would result in a rule which could easily be availed of by a fraud feasor to further his evil purpose without fear of being held responsible therefor. This would be highly undesirable.

██ It is next urged that the motion to dismiss should have been sustained because plaintiffs failed to prove substantially the representations alleged. The representation pleaded was "that said furnace was sound and in good operating condition." The evidence shows that defendant Murch told Harry G. Herring that the furnace had been in operation during the past heating season and told Mr. Herring, Sr., that the furnace was in working condition up to the day he moved from the premises, and was still in working condition. Plaintiff Keith O. Wilson stated that he was told that "it was in operating condition" and that "we should get further use out of it" and that the furnace was "in working condition." Plaintiff Lorraine Wilson stated that Mr. Herring said, " * * * the furnace was working, the tenants had used it, the furnace was in operating condition and he felt that we could count on it for one year or two or the length of time that we—before

we replaced the furnace or before we had any extensive repairs done." She further testified she asked Mrs. Herring, "Is the furnace broken?", and Mrs. Herring said, "Of course not." She also stated that Mr. Herring said, "the previous owners had used it and it was working."

Upon the foregoing evidence the question is presented as to whether or not there was a variance between this allegation and the proof. In this regard it must be borne in mind that plaintiffs were not required to prove the representation alleged verbatim et literatim, but were required to prove representations which were substantially the same as those alleged; that is, statements having the same general meaning and effect. The proof was, we think, within these rules.

 It is also urged that the court erred in refusing to sustain the motion to dismiss for the reason that there was no evidence that plaintiffs had been damaged, since plaintiffs failed to offer evidence of the difference in value between the property as represented and its value in its then condition. It is sufficient to say that there was substantial evidence from which a jury could find that the furnace at the time of the purchase was absolutely worthless. There was, therefore, evidence that plaintiffs were in fact damaged by reason of the fraud. If the precise amount was not properly shown it would not require a dismissal, for in such an event plaintiffs would, at least, be entitled to nominal damages. The motion to dismiss could not be sustained on the ground claimed.

 It is contended that the court erred in giving Instruction No. 2. By said instruction the Court charged that damages should be assessed " * * * at the difference between the value of the real estate and house at 555 North Clay Avenue with a heating plant and furnace sound and in good operating condition and the value of said property with a heating plant and furnace in the condition which you find and believe from the evidence the heating plant in the property at 555 North Clay Avenue

was in at the time said property was sold to the plaintiffs, but not to exceed the sum of $700.00."

Appellants do not urge that the instruction applies an improper measure of damages, but contend that it was error to give it for the reason that there was no evidence to support it. Defendants' motion for new trial contained no assignment of error with reference to this instruction. In such a situation the point now attempted to be raised for the first time in this Court has not been preserved for review. Civil Rule 79.03 V.A.M.R. Block v. Rackers, Mo., 256 S. W.2d 760.

 It is next urged that the Court erred in refusing to give Instruction A offered by defendants. Said instruction reads as follows:

"The Court instructs the jury that by the term 'knowledge' is meant either actual knowledge or, what is tantamount to knowledge, that the statements were made as of his own knowledge by the utterer, when in fact he had neither any knowledge on the subject nor reasonable grounds to believe the representations so made to be true.

"The Court further instructs the jury that if you find from the evidence that the Defendants had reasonable grounds to believe the furnace in question was in operating condition then the transaction in question was not fraudulent, and your verdict should be for Defendants and against Plaintiffs."

The law is well settled that a trial court will not be convicted of committing reversible error for failure to give an instruction unless the instruction is substantially correct. Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S.W.2d 707, 65 A.L.R. 129; Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825.

To recover for fraudulent representations, it is not necessary that it be shown that defendant had actual knowledge of the

falsity of the facts stated by him. It is sufficient that he made the representations with the consciousness that he was without knowledge as to their truth or falsity, when, in fact, they were false. Luikart v. Miller, Mo., 48 S.W.2d 867; Gadberry v. Bolton, Mo.App., 242 S.W. 688; Peters v. Lohman, 171 Mo.App. 465, 156 S.W. 783. And where such a case is made the fact that there were reasonable grounds for the defendants to believe the truth of the representations cannot be a defense to the action. Serrano v. Miller & Teasdale Commission Co., 117 Mo. App. 185, 93 S.W. 810; White v. Reitz, 129 Mo.App. 307, 108 S.W. 601; Snyder v. Stemmons, 151 Mo.App. 156, 131 S.W. 724; Messerli v. Bantrup, Mo.App., 235 S.W. 485. In the case at bar this theory of recovery was pleaded and presented to the jury by plaintiffs' Instruction No. 2 and, since there was evidence to support the submission, it would have been error to give Instruction A. The point is ruled against appellants.

■■■■■ It is urged that the court erred in refusing to give and read to the jury Instruction C offered by the defendants. Said Instruction reads as follows:

"The Court instructs the Jury that there is a strong presumption against fraud and that where a transaction is capable of two interpretations, one fraudulent and the other not, then the transaction should be held honest.

"The Court further instructs the Jury that if you find from the evidence in this case that the transaction in question is capable of two interpretations, the one fraudulent and the other honest, then you should hold the transaction to have been honest and should find a verdict in favor of Defendants and against Plaintiffs."

In offering this instruction defendants, no doubt, had in mind advising the jury of the rule of law, which is to the effect that fraud is never to be presumed. This principle of law rests upon the fact that fraud is re-

garded as criminal in its essence, and involves moral turpitude at least, while on the other hand, there is a presumption that all men are honest. Considering this basis for the rule it might be said there is a presumption against fraud though the decisions do not announce the rule in those terms. However, assuming the instruction properly defined the rule it must be held that the court did not err in refusing the instruction. Instructions are to advise the jury what fact issues should be favorably decided to reach a verdict, and hence mere statements of abstract principles of law do not make proper instructions. Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30, and it is not error for a trial court to refuse such instructions. A somewhat similar instruction was held bad in Jones v. Norman, Mo.App., 248 S.W. 621, l. c. 623, where the Court said:

"We think defendant's instruction No. 4 was likely to mislead, prejudice, and confuse the jury. That part thereof to the effect 'that fraud cannot be presumed, guessed at, or found on mere suspicion' was an abstraction not applied in any way to the facts."

Furthermore, it is well settled law in this State that it is reversible error to instruct the jury as to the existence of a presumption when there is evidence to rebut it. Haycraft v. Grigsby, 88 Mo.App. 354; McCune v. Daniels, Mo.App., 251 S.W. 458; Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, 107 A.L.R. 465; Morton v. Heidorn, 135 Mo. 608, 37 S.W. 504; Bailey v. Bailey, Mo., 11 S.W.2d 1026; Detrich v. Mercantile Trust Co., Mo., 292 S.W.2d 300. There was evidence in the case which justified submission of the issue of fraud. Such being the case, defendants were not entitled to have the jury instructed that there was a presumption favorable to them. Defendants in support of their contention have cited certain cases which use general language to the effect that fraud is never presumed. These are no authority in support of the instruction. As stated in Taylor v. Commerce Trust Co., Mo.App., 319 S.W.2d 895, l. c. 897:

"The fact that language used in an instruction may be found in the reasoning or conclusions of an appellate court, or of a law text book, does not make it proper language for an instruction, regardless of how authoritative and wise it may be; and this is especially true when it is used in an abstract manner."

The court did not err in refusing to give Instruction C.

■ Defendants contend that the court erred in failing to dismiss that part of plaintiffs' action as pertained to punitive damages, as prayed in their motion to dismiss filed at the close of all the evidence. It is urged that the motion should have been sustained for the reason that plaintiffs failed to prove the misrepresentations alleged and an intent to deceive. We have heretofore held that there was evidence to support a finding of the existence of these two elements. In our judgment there was evidence from which it could be found that there was an intentional doing of a wrongful act without just cause or legal excuse, which justified the submission of the issue of punitive damages.

It is next urged that the court erred in admitting into evidence testimony with regard to certain conversation between plaintiffs' and defendants' agents which took place subsequently to the termination of the agency. This matter cannot be considered for the reason that the point raised was not preserved for appellate review in defendants' motion for new trial. Civil Rule 79.03–83.13.

■■ It is contended that the Court erred in permitting testimony concerning the condition of a water heater which was located in the basement of the premises. The transcript reveals that the matter first came up during the direct examination of plaintiff Keith O. Wilson. He testified that on his second visit to the house he went into the basement and observed that the water heater was disconnected. He stated that Mr. Herring was present at the time

and that he asked Mr. Herring about it. Mr. Herring replied that he would check on it; that he thought it was defective. This testimony went in without any objection whatever from defendants' counsel. Thereafter plaintiff was asked if he had further conversations with Mr. Herring about the condition of the water heater. An objection was interposed to this line of questioning on the ground that it was beyond the scope of the pleadings. The objection was overruled and plaintiff replied, "At the time of our conversation it involved the actual sale price of the property. The statement was made by Mr. Herring that the water heater was defective, that it would be replaced if we purchased the house at a figure of $13,200.00." The witness further testified that he, in agreement with his wife, made an offer of $13,000.00, and that plaintiffs would replace the water heater. On cross-examination defendants' counsel interrogated the witness about what Herring had told the witness. Mrs. Wilson gave similar testimony to that given by her husband. All this was without objection. Defendant Murch, on cross-examination, testified, over the objection of defendants' counsel, that he noticed the water heater was not operating, and told the Herrings at the time the listing contract was signed that it was not in good condition. The basis of the objection was that the condition of the water heater was not an issue under the pleadings. Mr. Harry G. Herring, who was defendants' witness, testified in answer to a question put to him by defendants' counsel that Mr. Murch told him the water heater was inoperative and would be replaced. He further stated that he told his father that the water heater was broken and that Mr. Murch was going to replace it. On cross-examination he testified that at the time the listing contract was being filled out Mr. Murch told him the water heater was not in operation.

It will be seen that the evidence was not offered by plaintiffs in support of any contention that misrepresentations had been made with reference to the condition of

the heater for which they were entitled to damages, but only as a factor in the negotiation of the sale price of the premises in question. It will also be observed that when evidence concerning the condition of the heater was first introduced no objection by defendants was made to it. In such a situation they will not be heard to complain of the subsequent admission of like testimony. Anderson v. Welty, Mo.App., 334 S.W.2d 132, l. c. 138. Furthermore, in our judgment, the evidence did not materially affect the merits of the action, and for that reason we cannot reverse the judgment even though the admission of the testimony could be said to be error. Civil Rule 83.13.

Finding no reversible error, the judgment is affirmed.

WOLFE, J., and HARRY A. HALL, Special Judge, concur.

RUDDY, J., not participating.