Dong LI, et al., Appellants,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Respondent.**

No. 74540.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 10, 1999.

Alan G. Kimbrell, St. Louis, for appellants.

Ann E. Buckley, St. Louis, for respondent.

ROBERT E. CRIST, Senior Judge.

Dong Li and his wife Xiao Mei Zhou, appeal from the judgment entered after a jury returned a verdict for defendant, Metropolitan Life Insurance Co. (MetLife), on their claim for fraud in the sale of life insurance policies. We affirm.

From 1991 through 1993, MetLife employed Bruno Wu to sell life insurance policies. In 1991 and 1992, Dong Li, Xiao Mei Zhou, and several other persons purchased "L95" life insurance policies from MetLife through Wu. In the spring of 1993, certain purchasers complained to MetLife regarding their insurance purchases from Wu. In a letter to MetLife's CEO, they asserted that Wu had not followed the appropriate sale procedures established by Metlife, and that Wu misrepresented important aspects of the "L95" policy.

On May 27, 1993, Dong Li, on behalf of certain purchasers, filed a Consumer Complaint Report with the Missouri Department of Insurance. As part of its response to this complaint, MetLife included a copy of a letter by Wu in which he discussed the accusations that he misrepresented the policies to the policy holders.

Dong Li, Xiao Mei Zhou, and several other named plaintiffs brought an action

against MetLife and Wu, alleging fraud in the sales of the policies. The petition asserts that Wu made the following false representations: (1) the company guaranteed that no more premiums would be charged after being paid for seven years; (2) after paying premiums for one year, dividends could be collected on the policies; (3) the cash value of a policy could be borrowed at an interest rate of one percent; and (4) the return rate on the "investment would be in two-digit numbers." After dismissing Wu from the lawsuit, the plaintiffs filed a third amended petition with three counts. The plaintiffs again alleged fraud in the sales of the policies in the first count. In the second count, certain plaintiffs alleged libel based on Wu's letter that MetLife sent to the Department of Insurance. Dong Li and Xiao Mei Zhou alleged in the third count that MetLife issued a policy on the life of their child, and that they did not sign or authorize the application for this policy.

MetLife filed a motion for summary judgment on the libel count, asserting that a response to an inquiry made by the Department of Insurance, in the course of an investigation, was absolutely privileged. The trial court granted Metlife's motion. The court stated there was no just reason for delay and that the summary judgment entered on the libel claim was final for purposes of appeal. This court affirmed the trial court's judgment because the statements contained in Wu's letter were relevant to the Department of Insurance investigation and therefore the alleged defamatory statements were absolutely privileged. *Li v. Metropolitan Life Ins. Co.,* 955 S.W.2d 799, 804 (Mo.App. E.D.1997).

Prior to trial, Dong Li and Xiao Mei Zhou dismissed their third count regarding their child's policy. As for the fraud count, certain plaintiffs dismissed their actions without prejudice and others dismissed with prejudice. The present case proceeded to trial on Dong Li's and Xiao Mei Zhou's claim of fraud in the sales of the policies. The jury returned a verdict for MetLife. Dong Li and Xiao Mei Zhou (hereafter plaintiffs) appeal, raising two points.

■■■ To establish fraud, a plaintiff must prove nine elements: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of the truth; 5) the speaker's intent that it should be acted upon; 6) the representee's ignorance of its falsity; 7) the representee's reliance on its truth; 8) the representee's right to rely thereon; and 9) the representee's consequent and proximate injury. *Cabinet Distributors, Inc. v. Redmond,* 965 S.W.2d 309, 312 (Mo. App. E.D.1998). Under the theory of respondeat superior, an employer is liable for damages attributable to the misconduct of an employee or agent acting within the course and scope of the employment or agency. *McHaffie v. Bunch,* 891 S.W.2d 822, 825 (Mo. banc 1995).

■■ In their first point on appeal, plaintiffs argue that the trial court erred in giving the converse instruction that was offered by MetLife and submitted to the jury.

The following verdict director was offered by plaintiffs and submitted to the jury:

Your verdict must be for plaintiffs if you believe:

First, Bruno Wu was operating within the course and scope of his employment by defendant at the time of representations, if any, made by him to the plaintiffs, and,

Second, Bruno Wu either represented to plaintiffs that the rate of return on premiums paid on L–95 policies was in two digit numbers, or represented to plaintiffs that the time period required to pay off an L–95 policy was seven years, or represented to plaintiffs the interest rate on loans by defendant to policyholders in amounts up to the amount of premiums paid was one percent, and

Third, the representation was false, and

Fourth, the defendant [MetLife] knew that it was false, and

Fifth, the representation was material to the purchase by plaintiffs of L–95 policies, and

Sixth, plaintiffs relied on the representation in the making of the purchases, and in so relying plaintiffs used that degree of care that would have been reasonable in plaintiffs' situation, and

Seventh, as a direct result of such representation the plaintiffs were damaged.

MetLife objected to this instruction, arguing that the fourth paragraph should refer to Bruno Wu rather than MetLife. The trial court overruled this objection.

The following converse instruction was offered by MetLife and submitted to the jury:

Your verdict must be for defendant Metropolitan Life Insurance Company unless you believe that Bruno Wu made one or more of the representations submitted in Instruction Number 7 and that such representations were false and Bruno Wu knew they were false, and that in making such representations, Bruno Wu was acting in the course and scope of his employment with defendant Metropolitan Life Insurance Company, and that as a direct result of such representations the plaintiffs were damaged.

Plaintiffs objected to the portion of this instruction that states "Bruno Wu knew they were false," arguing that the instruction should refer to Metlife's knowledge that the representations were false. The trial court overruled this objection. In ruling on plaintiffs' motion for a new trial, the court found that the converse instruction was proper and that part of plaintiffs' verdict director should have been that Bruno Wu knew his representations were false.

The issue is whether under the circumstances presented here, the jury should have been instructed as to MetLife's or Wu's knowledge of the falsity of the representation.

Plaintiffs rely on the court's ruling in *Essex v. Getty Oil Co.*, 661 S.W.2d 544 (Mo.App.1983), for their contention that the jury should have been instructed as to MetLife's knowledge of the falsity of the representation. In *Essex,* the plaintiffs brought two actions against Skelly Oil Co. (Skelly) for fraudulent misrepresentation and unfair competition. *Essex,* 661 S.W.2d at 547. The plaintiffs' claims arose from agreements where the plaintiffs leased service stations from Skelly. *Id.* Two "territorial representatives" told the plaintiff, Arlo Essex, that a cancellation clause in the lease, that gave either party the option to cancel the lease on thirty days notice, was merely a formality and if he "ran a good operation" he could remain in the location until he decided to retire. *Id.* at 547–48. According to one of the territorial representatives, he and others were instructed at the Skelly training program to overcome resistance prospective lessees might express about the cancellation clause by saying that the clause would not be used to terminate a lease unless good cause by reason of unsatisfactory performance of the lessee gave actual grounds to seek another station operator. *Id.* at 548. Skelly terminated the plaintiffs' lease because it wanted to convert the station into a self-service operation under the name of a Skelly subsidiary. *Id.* Skelly never charged that the plaintiffs conducted an unsatisfactory operation. *Id.* The jury returned a verdict for the plaintiffs but the trial court entered judgment notwithstanding the verdict for Skelly and, in the alternative, ordered a new trial. *Id.* at 547.

In an argument to support the judgment notwithstanding the verdict, Skelly contended that there was insufficient proof that their two "territorial representatives" knew the statements were false. *Id.* at 549. In rejecting Skelly's argument, the court held that the argument proceeded "on the false assumption that Skelly may escape liability if the person who made the communication has been insulated from guilty knowledge." *Id.* at 550. The court

then stated that a "recovery can be had for false representations made to another with the intent they be communicated to a third person for the purpose of defrauding the third person. The fact that the person used as an agent to convey the representation is innocent does not relieve the party charged with fraud." *Id.* at 550–51. The court held that the circumstances of the training sessions and the subsequent conduct of Skelly, replacing one of the plaintiffs with a Skelly subsidiary, constituted sufficient facts to present the issue to the jury. *Id.* at 551.

*Essex* is distinguishable from the present case. In *Essex*, "territorial representatives" were instructed to inform prospective lessees that the lease would be terminated only for good cause, contrary to the language of the cancellation clause. *Id.* at 548. Here, there is no evidence that MetLife directed or intended for Wu to make fraudulent representations regarding the "L95" policy. Furthermore, we disagree with plaintiffs' contention that it is fair to "presume" that any representations Wu made about the policy were based on the training MetLife provided regarding the policy.

The Missouri Supreme Court similarly distinguished *Essex* in *Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513 (Mo. banc 1988). In *Emerick*, the plaintiff signed an agreement to take over the "Kansas City agency," of the defendant, Mutual Benefit Life Insurance Co. (Mutual), after discussions with Mr. Mascotte, a Vice President of Mutual. *Emerick*, 756 S.W.2d at 515–16. Problems arose between the parties regarding the payment of certain costs. *Id.* at 516–17. Another Vice President of Mutual subsequently informed the plaintiff of the "company's decision" that he should resign or be terminated if he refused. *Id.* at 517. The plaintiff brought an action against Mutual alleging among other things fraud. *Id.* The jury returned a verdict for the plaintiff. *Id.* at 515.

One issue on appeal was the plaintiff's contention that contrary to Mutual's policy, Mr. Mascotte represented to the plaintiff he would be the expert in managing the agency. *Id.* at 520. The court held there was insufficient proof that Mr. Mascotte did not intend to treat the plaintiff as an expert. *Id.* The court then considered the plaintiff's contention that because Mr. Mascotte was Mutual's agent it was irrelevant whether he knew his statements were false. *Id.* The plaintiff argued further that "' [a] recovery can be had for false representations made to another with the intent that they be communicated to a third person for the purpose of defrauding said third person.'" *Id.* The court stated "In *Essex v. Getty Oil*, 661 S.W.2d 544 (Mo. App.1983), the contract at issue had a termination clause, but defendant's agent represented to plaintiff at the time it was signed that it would be invoked only for good cause. There was evidence the company had expressly directed a misstatement." *Id.* The court held there was no evidence that Mutual directed Mr. Mascotte to make the statements at issue and the plaintiff did not identify any superior who directed Mr. Mascotte to make such statements. *Id.* The court also held that the plaintiff failed to present any evidence that Mutual did not intend for him to be the expert in running the agency. *Id.*

■ The present case is analogous to *Emerick*. Here, there was no evidence that MetLife expressly directed Wu to make misstatements and plaintiffs fail to identify any superior who directed Wu to make any misstatements. Because there is no evidence that MetLife directed or intended Wu to make false representations, the converse instruction properly refers to Wu's rather than MetLife's knowledge of the falsity of the representations. *See Tietjens v. General Motors Corp.*, 418 S.W.2d 75, 79–80 (Mo.1967).

Plaintiffs also rely on *Wilson v. Murch*, 354 S.W.2d 332 (Mo.App.1962), in which this court stated:

The law is well established that, where an agent, acting within his [or her] actual or apparent authority, procures the execution of a contract for the sale of property by means of fraud, the principal is liable for the damage incurred thereby, even though the principal is innocent of personal participation in the fraud, when [the principal] accepts and retains benefits which accrue from the transaction.

*Wilson,* 354 S.W.2d at 337. However, there is a distinction between when a principal will be held liable for the act of its agent as opposed to whether a jury should be instructed on the principal's or agent's knowledge of the falsity of the representation. For reasons previously stated, the trial court did not err in submitting the converse instruction that refers to Wu's knowledge of the falsity of the representations.

Plaintiffs also contend that the verdict director and converse instruction conflicted, and the effect was to improperly require plaintiffs to prove that both Wu and MetLife knew that the representation was false. Plaintiffs failed to specifically argue at trial that the verdict director and converse conflicted. Rule 70.03; *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 445 (Mo. banc 1998). The converse properly instructed as to Wu's knowledge. Plaintiffs' burden regarding MetLife occurred because of the erroneous verdict director offered by plaintiffs. *See Union Electric Co. v. Brown,* 783 S.W.2d 409, 411 (Mo.App.1989). Plaintiffs' first point is denied.

In their second point, plaintiffs argue that the trial court abused its discretion in sustaining MetLife's objection to plaintiffs' questioning of Dong Li regarding the application for their child's policy and an authorization for the bank to deduct premiums for the policy. We review a trial court's ruling excluding evidence for abuse of discretion. *Howe v. ALD Services, Inc.,* 941 S.W.2d 645, 654 (Mo.App. E.D.1997). Review of the record reveals that the trial court did not abuse its discretion. No error of law appears and an extended written opinion for this point would have no precedential value. Plaintiffs' second point is denied. Rule 84.16(b).

The judgment of the trial court is affirmed.

JAMES A. PUDLOWSKI, P.J., and CLIFFORD H. AHRENS, concur.